# HEINTZ ET AL. *v.* JENKINS

No. 94–367.   Argued February 21, 1995—Decided April 18, 1995

BREYER, J., delivered the opinion for a unanimous Court.

*George W. Spellmire* argued the cause for petitioners. With him on the briefs were *D. Kendall Griffith, Bruce L. Carmen,* and *David M. Schultz.*

*Daniel A. Edelman* argued the cause for respondent. With him on the brief were *Joanne S. Faulkner* and *Richard J. Rubin.**

JUSTICE BREYER delivered the opinion of the Court.

The issue before us is whether the term "debt collector" in the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U. S. C. §§ 1692–1692*o* (1988 ed. and Supp. V), applies to a lawyer who "regularly," *through litigation,* tries to collect consumer debts. The Court of Appeals for the Seventh Circuit held that it does. We agree with the Seventh Circuit and we affirm its judgment.

The Fair Debt Collection Practices Act prohibits "debt collector[s]" from making false or misleading representations and from engaging in various abusive and unfair practices. The Act says, for example, that a "debt collector" may not use violence, obscenity, or repeated annoying phone calls, 15 U. S. C. § 1692d; may not falsely represent "the character, amount, or legal status of any debt," § 1692e(2)(A); and may not use various "unfair or unconscionable means to collect or attempt to collect" a consumer debt, § 1692f. Among other things, the Act sets out rules that a debt collector must follow for "acquiring location information" about the debtor, § 1692b; communicating about the debtor (and the

---

*Briefs of *amici curiae* urging reversal were filed for the American Bar Association by *George E. Bushnell;* for the Commercial Law League of America by *Manuel H. Newburger* and *Barbara M. Barron;* and for the National Association of Retail Collection Attorneys by *Ronald S. Canter* and *Rosalie B. Levinson.*

*Robert J. Hobbs, Joan S. Wise, Deborah M. Zuckerman,* and *Alan Alop* filed a brief for the National Consumer Law Center, Inc., et al. as *amici curiae* urging affirmance.

*Andrew Rosen* filed a brief for Sherry Ann Edwards as *amicus curiae.*

debt) with third parties, §1692c(b); and bringing "[l]egal actions," §1692i.  The Act imposes upon "debt collector[s]" who violate its provisions (specifically described) "[c]ivil liability" to those whom they, *e. g.*, harass, mislead, or treat unfairly.  §1692k.  The Act also authorizes the Federal Trade Commission (FTC) to enforce its provisions.  §1692*l*(a). The Act's definition of the term "debt collector" includes a person "who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another."  §1692a(6). And, it limits "debt" to consumer debt, *i. e.*, debts "arising out of . . . transaction[s]" that "are primarily for personal, family, or household purposes."  §1692a(5).

The plaintiff in this case, Darlene Jenkins, borrowed money from the Gainer Bank in order to buy a car.  She defaulted on her loan.  The bank's law firm then sued Jenkins in state court to recover the balance due.  As part of an effort to settle the suit, a lawyer with that law firm, George Heintz, wrote to Jenkins' lawyer.  His letter, in listing the amount she owed under the loan agreement, included $4,173 owed for insurance, bought by the bank because she had not kept the car insured as she had promised to do.

Jenkins then brought this Fair Debt Collection Practices Act suit against Heintz and his firm.  She claimed that Heintz's letter violated the Act's prohibitions against trying to collect an amount not "authorized by the agreement creating the debt," §1692f(1), and against making a "false representation of . . . the . . . amount . . . of any debt," §1692e(2)(A).  The loan agreement, she conceded, required her to keep the car insured " 'against loss or damage' " and permitted the bank to buy such insurance to protect the car should she fail to do so.  App. to Pet. for Cert. 17.  But, she said, the $4,173 substitute policy was not the kind of policy the loan agreement had in mind, for it insured the bank not only against "loss or damage" but also against her failure to repay the bank's car loan.  Hence, Heintz's "representation"

about the "amount" of her "debt" was "false"; amounted to an effort to collect an "amount" not "authorized" by the loan agreement; and thus violated the Act.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the District Court dismissed Jenkins' Fair Debt Collection lawsuit for failure to state a claim. The court held that the Act does not apply to lawyers engaging in litigation. However, the Court of Appeals for the Seventh Circuit reversed the District Court's judgment, interpreting the Act to apply to litigating lawyers. 25 F. 3d 536 (1994). The Seventh Circuit's view in this respect conflicts with that of the Sixth Circuit. See *Green* v. *Hocking*, 9 F. 3d 18 (1993) *(per curiam)*. We granted certiorari to resolve this conflict. 513 U. S. 959 (1994). And, as we have said, we conclude that the Seventh Circuit is correct. The Act does apply to lawyers engaged in litigation.

There are two rather strong reasons for believing that the Act applies to the litigating activities of lawyers. *First*, the Act defines the "debt collector[s]" to whom it applies as including those who "regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." § 1692a(6). In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. See, *e. g.*, Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").

*Second*, in 1977, Congress enacted an earlier version of this statute, which contained an express exemption for lawyers. That exemption said that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub. L. 95–109, § 803(6)(F), 91 Stat. 874, 875. In 1986, however, Congress repealed this exemption in its entirety, Pub. L. 99–361, 100 Stat. 768, without creating a narrower, litigation-

related, exemption to fill the void. Without more, then, one would think that Congress intended that lawyers be subject to the Act whenever they meet the general "debt collector" definition.

Heintz argues that we should nonetheless read the statute as containing an implied exemption for those debt-collecting activities of lawyers that consist of litigating (including, he assumes, settlement efforts). He relies primarily on three arguments.

*First,* Heintz argues that many of the Act's requirements, if applied directly to litigating activities, will create harmfully anomalous results that Congress simply could not have intended. We address this argument in light of the fact that, when Congress first wrote the Act's substantive provisions, it had for the most part exempted litigating attorneys from the Act's coverage; that, when Congress later repealed the attorney exemption, it did not revisit the wording of these substantive provisions; and that, for these reasons, some awkwardness is understandable. Particularly when read in this light, we find Heintz's argument unconvincing.

Many of Heintz's "anomalies" are not particularly anomalous. For example, the Sixth Circuit pointed to § 1692e(5), which forbids a "debt collector" to make any "threat to take action that cannot legally be taken." The court reasoned that, were the Act to apply to litigating activities, this provision automatically would make liable any litigating lawyer who brought, and then lost, a claim against a debtor. *Green, supra,* at 21. But, the Act says explicitly that a "debt collector" may not be held liable if he "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." § 1692k(c). Thus, even if we were to assume that the suggested reading of § 1692e(5) is correct, we would not find the result so absurd as to warrant implying an exemption for litigating lawyers. In any event, the assumption

would seem unnecessary, for we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an "action that cannot legally be taken."

The remaining significant "anomalies" similarly depend for their persuasive force upon readings that courts seem unlikely to endorse. For example, Heintz's strongest "anomaly" argument focuses upon the Act's provisions governing "[c]ommunication in connection with debt collection." § 1692c. One of those provisions requires a "debt collector" not to "communicate further" with a consumer who "notifies" the "debt collector" that he or she "refuses to pay" or wishes the debt collector to "cease further communication." § 1692c(c). In light of this provision, asks Heintz, how can an attorney file a lawsuit against (and thereby communicate with) a nonconsenting consumer or file a motion for summary judgment against that consumer?

We agree with Heintz that it would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read § 1692c(c) in that way—if only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy. Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies. We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our

conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.

*Second,* Heintz points to a statement of Congressman Frank Annunzio, one of the sponsors of the 1986 amendment that removed from the Act the language creating a blanket exemption for lawyers. Representative Annunzio stated that, despite the exemption's removal, the Act still would not apply to lawyers' litigating activities. Representative Annunzio said that the Act

> "regulates debt collection, not the practice of law. Congress repealed the attorney exemption to the act, not because of attorney[s'] conduct in the courtroom, but because of their conduct in the backroom. Only collection activities, not legal activities, are covered by the act. . . . The act applies to attorneys when they are collecting debts, not when they are performing tasks of a legal nature. . . . The act only regulates the conduct of debt collectors, it does not prevent creditors, through their attorneys, from pursuing any legal remedies available to them." 132 Cong. Rec. 30842 (1986).

This statement, however, does not persuade us.

For one thing, the plain language of the Act itself says nothing about retaining the exemption in respect to litigation. The line the statement seeks to draw between "legal" activities and "debt collection" activities was not necessarily apparent to those who debated the legislation, for litigating, at first blush, seems simply one way of collecting a debt. For another thing, when Congress considered the Act, other Congressmen expressed fear that repeal would limit lawyers' "ability to contact third parties in order to facilitate settlements" and "could very easily interfere with a client's right to pursue judicial remedies." H. R. Rep. No. 99–405, p. 11

(1985) (dissenting views of Rep. Hiler). They proposed alternative language designed to keep litigation activities outside the Act's scope, but that language was not enacted. *Ibid.* Further, Congressman Annunzio made his statement not during the legislative process, but *after* the statute became law. It therefore is not a statement upon which other legislators might have relied in voting for or against the Act, but it simply represents the views of one informed person on an issue about which others may (or may not) have thought differently.

*Finally,* Heintz points to a "Commentary" on the Act by the FTC's staff. It says:

> "Attorneys or law firms that engage in traditional debt collection activities (sending dunning letters, making collection calls to consumers) are covered by the [Act], but *those whose practice is limited to legal activities are not covered.*" Federal Trade Commission—Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50100 (1988) (emphasis added; footnote omitted).

We cannot give conclusive weight to this statement. The Commentary of which this statement is a part says that it "is not binding on the Commission or the public." *Id.,* at 50101. More importantly, we find nothing either in the Act or elsewhere indicating that Congress intended to authorize the FTC to create this exception from the Act's coverage— an exception that, for the reasons we have set forth above, falls outside the range of reasonable interpretations of the Act's express language. See, *e. g., Brown* v. *Gardner,* 513 U. S. 115, 120–122 (1994); see also *Fox* v. *Citicorp Credit Servs., Inc.,* 15 F. 3d 1507, 1513 (CA9 1994) (FTC staff's statement conflicts with Act's plain language and is therefore not entitled to deference); *Scott* v. *Jones,* 964 F. 2d 314, 317 (CA4 1992) (same).

For these reasons, we agree with the Seventh Circuit that the Act applies to attorneys who "regularly" engage in consumer-debt-collection activity, even when that activity consists of litigation.  Its judgment is therefore

*Affirmed.*