**Michelle SANDERS, Individually And on Behalf of All Other Similarly Situated, Plaintiffs,**

v.

**John Lee JACKSON, Universal Fidelity Corporation, a Texas Corporation, and Terry W. Simonds, Defendants.**

No. 98 C 209.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 1, 1998.

David J. Philipps, Beeler, Schad & Diamond, P.C., Chicago, IL, for Plaintiff.

David M. Schultz, Hinshaw & Culbertson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

Michelle Sanders ("Plaintiff") instituted this class action, individually and on behalf of all others similarly situated, against Universal Fidelity Corporation ("UFC"), UFC's in-house counsel John Lee Jackson ("Jackson"), and UFC's President Terry Simonds ("Simonds") (collectively "Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and seeking damages. The alleged violations arose out of a demand letter which Jackson sent to Plaintiff. In the event of violations, the FDCPA provides for damages to a class in an amount up to 1% of the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B).

The parties have settled all issues involved in the case except for the issue of the putative class's statutory damages as measured by 1% of UFC's net worth. In the course of discovery, Plaintiff sought information pertaining to UFC's net worth. Defendants provided · UFC's certified financial statements prepared in accordance with generally accepted accounting principles ("GAAP") but resisted further discovery regarding the value of the corporation. Defendant contends that its net worth is $101,353 as shown as total stockholders equity on the balance sheet. (Pl.'s Mot. to Compel, Ex.1.) Plaintiff, believing that UFC was worth more than the financial statements suggested, brought a motion to compel further discovery. In particular, Plaintiff argues that UFC's net worth equals the fair market value of the company which it computes at $1,800,000. (Felz Aff.) The parties have agreed that the Court should decide the issue of net worth while preserving their right to appeal. For the following reasons the Court holds that the term net worth as used in the FDCPA means the difference between assets and liabilities as determined in accordance with generally accepted accounting principles (stockholder's equity) and not fair market value.

## I. THE FAIR DEBT COLLECTION PRACTICES ACT

### A. The Purposes of the Act

"The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *Bass v. Stolper*, 111 F.3d 1322, 1324 (7th Cir.1997). While the Act is tailored to protect .consumers and should be so interpreted to effectuate that purpose, it is clear from the damages provision that Congress also had the goal of restricting damage awards.

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an about equal to the sum of (1)

any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a)(2)(B).

## B. The Interpretation of the Term Net Worth

The Court has been provided with two alternative definitions of net worth: 1) the difference between assets and liabilities as derived from UFC's financial statements as prepared in accordance with GAAP; or 2) the fair market value of UFC. Under the first definition, UFC's net worth is its total stockholder's equity of $101,353, and the settlement amount is $1,013.53. Under the second definition, the parties have agreed for purposes of this proceeding not to contest Plaintiff's determination that UFC's fair market value is $1,800,000, and a settlement amount of $18,000.

Plaintiff acknowledges that UFC's financial statements were prepared and certified in accordance with GAAP. However, Plaintiff argues that because UFC's financial statement does not include goodwill as an asset, it grossly understates the true value of UFC as a going concern. Plaintiff argues that a fair market value determination of UFC's business is the appropriate method of determining net worth under the FDCPA. The Court disagrees because of Seventh Circuit authority, the practical problems created by Plaintiff's approach, plain meaning of the terms, and an understanding of the role of goodwill under GAAP.

### 1. Seventh Circuit Authority

When faced with an analogous situation, the Seventh Circuit determined that net worth "must be derived from the company's books rather than from an appraisal." *Con-*

*tinental Web Press, Inc. v. NLRB,* 767 F.2d 321 (7th Cir.1985). In *Continental,* the Seventh Circuit interpreted the term net worth as used in the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2)(B). *Id.* at 322. Under EAJA a firm was entitled to an award of attorney's fees in cases in which the government's position was not substantially justified if the firm had a net worth of less than $5 million or no more than 500 employees. *Id.* Continental's net worth was under $5 million on its financial statement. *Id.* The government argued that the court should not permit accumulated deprecation to be subtracted from the value of the assets because it did not reflect the true value of the company. *Id.* The government argued that the court should appraise the assets' fair market value, in which case the net worth would exceed $5 million. *Id.* at 323. In language that is equally applicable to the case at bar, the Seventh Circuit held that net worth should be determined in accordance with GAAP.

> Congress did not define the statutory term "net worth." It seems a fair guess that if it had thought about the question, it would have wanted the courts to refer to generally accepted accounting principles. What other guideline could there be? Congress would not have wanted us to create a whole new set of accounting principles just for use in cases under the Equal Access to Justice Act. The proceeding to recover attorney's fees under the Act is intended to be summary; it is not intended to duplicate in complexity a public utility commission's rate of return proceeding.

*Id.* See also *Duran v. Credit Bureau,* 93 F.R.D. 607, 611 (D.Ariz.1982) (stating that in computing net worth under the FDCPA "it may become necessary to have the defendant's net worth determined by a certified public accountant using recognized accounting procedures").

### 2. Practical Issues

The Seventh Circuit in *Continental* avoided the potential complexity that can stem from adopting a fair market value approach. Such complexity is equally likely in a FDCPA case. If Plaintiff's fair market approach were adopted, the Court would be

faced with an extended proceeding and battles of experts over the fair market value of collection agencies, law firms and others subject to the Act. The large majority of FDCPA cases resolved by this Court result in actual damages to the class of less than $10,000. It would be anomalous to require the parties to spend tens of thousands of dollars in expert fees to help the court decide whether the recovery should be $1,014 or $18,000. By using the term net worth, Congress intended a simple, expedient process of determining damages, for instance, through examining financial statements which most businesses maintain.

### 3. Plain Meaning

■■ The FDCPA does not include a definition of net worth. In the absence of a statutory definition, courts give terms their ordinary meeting. *Bass,* 111 F.3d at 1325. Plain meaning can be determined by using a dictionary. *Black's Law Dictionary* defines net worth as "[t]he amount by which assets exceed liabilities. Remainder after deduction of liabilities of individual, corporation, etc." *Black's Law Dictionary* 1041 (6th ed.1990). The *Random House Dictionary* defines net worth as net assets. *Random House Dictionary of the English Language* 1290 (2d ed.1987). Net assets is defined as "the total assets of a business minus its total liabilities." *Id.*

Plaintiff has argued that net worth as used in FDCPA should be interpreted as fair market value. The plain meaning of net worth is not fair market value. If Congress had wanted the measure of damages to be 1% of fair market value it would have used that term instead of net worth. Congress uses the term fair market value frequently in statutes, thus demonstrating its understanding of the fine distinction between these technical accounting terms. *See, e.g.,* 16 U.S.C.A. § 79c(b)(2) (Secretary may compensate owner of land for fair market value of rights reserved on land); 26 U.S.C.A. § 1396(d)(2)(E)(1) (fair market value of assets owned by employer must exceed $500,000).

Plaintiff also argues that not including goodwill as an asset converts the measure of damages from one dependent on net worth to one dependent on book value. However, Plaintiff ignores the fact that in the accounting world the two terms mean the same thing when referring to a company. Book value "[o]f a firm [is] the excess of total assets over total liabilities. Net assets." Clyde P. Stickney & Roman L. Weil, *Financial Accounting* G–12 (7th ed.1994).

### 4. Goodwill Under Generally Accepted Accounting Principles

Plaintiff argues that because UFC's financial statement does not include goodwill as an asset, it grossly understates the true value of UFC as a going concern. The Accounting Principles Board issued a full opinion addressing the permutations of goodwill. First, the circumstances under which goodwill is recorded as an asset are extremely limited, that is, only when there is an acquisition or some other type of business combination. "The costs of developing goodwill and other intangible assets with indeterminate lives are ordinarily not distinguishable from the current costs of operations and are thus not assignable to specific assets." APB Opinion No. 17, *Intangible Assets,* ¶ 15 (1970). However, "[t]he Board concludes that a company should record as assets the costs of intangible assets acquired from others, including goodwill acquired in a business combination." *Id.* ¶ 9. *See also* Miller *GAAP Guide,* § 23.05 (1998) ("A company records as assets the costs of intangible assets acquired from other enterprises or individuals."). This is because only in the context of a business combination can goodwill be valued. "The cost of unidentifiable intangible assets is measured by the difference between the total price paid for the group of assets or of the enterprise acquired and the sum of the costs assigned to identifiable assets acquired, less liabilities assumed. Cost of identifiable assets do not include goodwill." Miller *GAAP Guide,* § 23.05 (1998) (citing APB Opinion No. 17, *Intangible Assets,* ¶ 26 (1970)). Outside of the context of a business combination goodwill is not easily identifiable. Miller *GAAP Guide,* § 23.04 (1998).

This analysis is supported by many other authors in the field.

In GAAP financial statements, goodwill can be recorded only in the context of an acquisition of one entity by another entity. The rationale for this practice has been set forth by the Financial Accounting Standards Board (FASB) as follows: The cost of intangible assets acquired either singly or in groups, including intangible assets acquired in a business combination, from other businesses or individuals is determined by general principles of the historical-cost basis of accounting. The costs of developing goodwill and other intangible assets with indeterminate lives are ordinarily not distinguishable from the current costs of operations and are thus not assignable to specific assets.

James H. Snelson, *Financial Statements,* 12 Am. Bankr.Inst. J. 13, 31 (Dec./Jan., 1994) (citing APB Opinion No. 17, *Intangible Assets,* ¶ 15 (1970)).

Consequently, goodwill is not an asset to be listed on balance sheets and therefore is not a factor in calculating net worth. "The lawyer should remember that goodwill—on the financial statements—only results when one company buys another and pays more than the fair value of the identifiable assets." Terry Lloyd, *Business Combinations and Accounting,* 536 PLI/Lit 193, 200 (1995). In sum, GAAP dictates that in the present case, since goodwill has not been previously recorded on the financial statements, it should not be included in the calculation of net worth.

## C. Plaintiff's Cases are Distinguishable

Plaintiff has cited several cases in which net worth and book value are discussed. However, these cases are inapposite in that the terms are being discussed when the fair market or economic value of the company was at issue. As noted above, the value of the company is not at issue in this case because Congress chose for net worth to be used as the measure of damages. For instance, in *Beerly* the Seventh Circuit criticized the term book value as a virtually meaningless. term. *Beerly v. Department of Treasury,* 768 F.2d 942, 946 (7th Cir.1985). However, this was in the context of a case in which the predominate issue was the valuation of the plaintiff's shares of a bank when the plaintiff was arguing that he was not paid enough in a merger. *Id.* The end goal in that case, giving the owner of the stock its cash equivalent, is very different from the end goal in this case of providing some measure of damages. *Id.* Further, whether net worth results in smaller damages is not of concern because that is the means by which Congress chose for damages to be measured. The parties may criticize Congress' choice of terms, but it would be beyond the bounds of the Court's responsibilities in this case to redefine net worth to mean fair market value. *See Heintz v. Jenkins,* 514 U.S. 291, 298 115 S.Ct. 1489, 1492–93, 131 L.Ed.2d 395 (1995) (warning against interpreting the FDCPA inconsistently with its express language); *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir.1998) (stating that it is the court's task to "interpret the words of Congress, not add to them").

In a second case, *Cole,* the issue was whether the business could have satisfied a judgment. *Cole v. Commissioner of Internal Revenue,* No. 9757–84, 1987 WL 40313 (U.S.Tax Ct. May 4, 1987). This required a determination of the economic value of the business. *Id.* The court pointed out that net worth did not have a relationship to economic value or reflect fair market value. *Id.* As discussed above, the plain meaning of net worth as used by Congress in the FDCPA does not demand that it reflect the economic value of a business. In sum, the cases Plaintiff cites do not persuade the Court that net worth should be interpreted to mean fair market value.

## II. CONCLUSION

The term net worth as used in the Fair Debt Collection Practices Act means the difference between assets and liabilities as determined in accordance with generally accepted accounting principles. Therefore, for purposes of the settlement agreement between the parties, the Court determines that Universal Fidelity Corporation's net worth is $101,353, and 1% of net worth is $1,013.53.