Brenda JOHNSON, Plaintiff,

v.

Jesse L. RIDDLE; Riddle & Associates, P.C., et al., Defendants.

No. 2:98–CV–00599 PGC.

United States District Court, D. Utah, Central Division.

Dec. 15, 2003.

---

Jason H. Robinson, Babcock, Scott & Babcock, Lester A. Perry, Hoole & King LC, Salt Lake City, UT, for Plaintiff.

Joan M. Andrews, Fabian & Clendenin, Rick L. Rose, Keith A. Kelly, Ray, Quinney & Nebeker, Joni J. Jones, Utah Attorney General's Office, Paul S. Felt, Salt Lake City, UT, Paul C. Droz, Mequite, NV, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CASSELL, District Judge.

This case is before the court on defendants Jesse Riddle and Riddle & Associates' (collectively "Riddle") motion for summary judgment (# 163–1). Plaintiff Brenda Johnson has also moved for summary judgment (# 160–1) and to certify a class (# 66–1). The court heard oral argument on September 17, 2003 and took the matter under advisement. Having reviewed the pleadings, the record on file, and the relevant law, the court GRANTS defendants' motion for summary judgment on the federal law claims under the Fair Debt Collection Practices Act and dismisses the remaining state law claims. As explained below, Riddle has established through undisputed fact a bona fide error defense to the FDCPA claims against him. As a result, he is entitled to summary judgment on these claims.

## BACKGROUND

This case has a lengthy history, which the court will not attempt to recite in its entirety here. Briefly, plaintiff Brenda Johnson seeks to hold defendant debt collectors Jesse Riddle and Riddle & Associates (collectively "Riddle") liable under the federal Fair Debt Collection Practices Act ("FDCPA"),[1] which forbids debt collectors from attempting to collect any amount not "permitted by law." In September 1996, Johnson tendered a check to a 7–Eleven convenience store in the amount of $2.64 in order to make a purchase. The check bounced and the matter was referred by 7–Eleven to Riddle for collection. After sending several demand letters, Riddle eventually filed a collection action against Johnson in Utah state court on August 14, 1997. Johnson was served with the complaint in the collection action on August 24, 1997. The collection suit filed by Riddle sought the face amount of the check as well as statutory fees—$15 under Utah's bad check statute[2] or, alternatively, $250 under the Utah civil shoplifting statute.[3] Riddle's filing of the suit seeking statutory shoplifting penalties under Utah law is the only conduct relevant to Johnson's FDCPA claim in this case.[4] Riddle eventually dismissed the collection suit after Johnson paid $17.64 to settle her debt.

On August 24, 1998, Johnson filed the complaint in this case against Riddle alleging a single federal cause of action under the FDCPA and various state law claims. On June 19, 2000, Johnson moved for class certification, and on July 18, 2000, Johnson moved for summary judgment on the issue of Riddle's liability under the FDCPA and two state statutes. Riddle cross-moved for summary judgment seeking to dismiss all of plaintiff's claims as a matter of law. On December 21, 2000, this court denied plaintiff's motion for summary judgment and granted Riddle's motion as to the FDCPA claim.[5] This court concluded that because several Utah trial courts had previously "granted shoplifting penalties in debt collection actions, recovery of shoplifting penalties is 'permitted by law,' as that phrase is used in the FDCPA."[6] This

---

1. 15 U.S.C. § 1692 *et seq.*

2. *Utah Code Ann.* § 7–15–1.

3. *Utah Code Ann.* § 78–11–15.

4. *See Johnson v. Riddle,* No. 2:98–CV–599C, 2000 WL 33980012, at *2 (D.Utah Dec. 20, 2000).

5. *Johnson v. Riddle,* No. 2:98–CV–599 C, 2000 WL 33980012 (D.Utah Dec. 20, 2000) (hereinafter "Initial Order").

6. Initial Order, at *6.

court reasoned that the Utah trial courts' decisions were "state interpretations of state statutes made by state judges who were cognizant of their acts."[7] Furthermore, this court found "no evidence that Riddle ... violated any court order or that any state judge ever told him to stop ... filing such lawsuits."[8] Accordingly, this court dismissed Johnson's FDCPA claim and declined to exercise federal supplemental jurisdiction over the remaining state law claims.[9]

On appeal, the Tenth Circuit Court of Appeals reversed on the issue of Riddle's compliance with the FDCPA. The Circuit held that this court's reliance on unpublished state trial court decisions to find Riddle's actions were "permitted by law" was error. The Circuit explained that federal courts interpreting state law must perform an *Erie* analysis—that is, they must "look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how the high court would rule."[10] Applying the *Erie* analysis, the Tenth Circuit concluded: "the Utah Supreme Court would not allow a holder of a dishonored check to collect a shoplifting penalty. Accordingly, we hold that Riddle violated the FDCPA because he attempted to collect an amount not permitted by law."[11] However, the Circuit expressly stated that the "conclusion that Riddle attempted to collect an amount not 'permitted by law' does not end the FDCPA inquiry,"[12] and remanded the case "to the district court to determine

whether Riddle is entitled to the bona fide error defense."[13] The Circuit did not address class certification. On remand, the case was reassigned to the undersigned judge. Johnson subsequently moved for summary judgment seeking to establish FDCPA liability and class certification. Riddle cross-moved for summary judgment seeking to apply the bona fide error defense as a matter of law.

## ANALYSIS

### *STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate when there is "no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law."[14] In deciding a motion for summary judgment, this court reviews all the evidence in the record, construing it and drawing all inferences therefrom most favorably to the non-moving party.[15] The non-moving party must establish at least "an inference of the existence of each element essential to the case."[16]

### *FAIR DEBT COLLECTION PRACTICES ACT CLAIMS*

As to the Fair Debt Collection Practices Act claim (the only federal claim before the court), the central issue is whether Riddle has established the bona fide error

---

7. *Id.*

8. *Id.* at *4, n. 11.

9. *Id.* at *6.

10. *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir.2002).

11. *Id.* at 1121.

12. *Id.*

13. *Id.* at 1124.

14. Rule 56(c), Fed. R. Civ. Proc.

15. *See Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065 (10th Cir.2002) (citations omitted).

16. *Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1201 (10th Cir.2003) (internal citations and quotations omitted).

defense under the undisputed facts of this case. The court finds that he has.

Under the FDCPA:

A debt collector may not be held liable in any action brought under this sub-chapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and result-ed from a bona fide error notwith-standing the maintenance of procedures reasonably adapted to avoid any such error.[17]

The Tenth Circuit court has stated that "an FDCPA defendant seeking the protec-tion of the bona fide error defense faces the burden of proving that the violation was (1) unintentional, (2) bona fide error, and (3) made despite 'the maintenance of procedures reasonably adapted to avoid' the violation."[18] In its opinion remanding this case, the Tenth Circuit addressed for the first time "whether the FDCPA bona fide error defense can apply to a mistake of *law* which resulted in an attempt to collect amounts not permitted by law."[19] The Circuit held that "the plain language of the FDCPA suggests no intent to limit the bona fide error defense to clerical er-rors."[20] The statute "refers by its terms to any 'error' that is 'bona fide.' "[21]

Applying the bona fide error defense to the undisputed facts of this case, the court finds that Riddle has established all three prongs as a matter of law.

### 1. The Error Was Unintentional

■ The first component of the bona fide error defense is whether the error was unintentional. This component essen-tially requires assessment of the debt col-lector's state of mind. As the Kansas District Court recently explained in ana-lyzing the Tenth Circuit's opinion in this case and other opinions on the FDCPA, "the issue of intent becomes principally a credibility question as to the defendants' subjective intent to violate the Act."[22] Here, Riddle has denied any intent to vio-late the Act. More important than Riddle's own testimony, however, is the complete absence of any evidence in the record even arguably suggesting any subjective desire by Riddle to depart from FDCPA require-ments. To the contrary, everything in the record suggests that he desired to follow the FDCPA and, indeed, to obtain court rulings to the effect that his actions com-plied with the FDCPA.

Johnson's principle response to this seemingly obvious point is to shift the question of intent from whether Riddle intentionally violated the Act to whether Riddle intentionally pursued certain debt collection actions—e.g., filing a lawsuit seeking civil shoplifting penalties.[23] But mere showing of intentional pursuit of a debt in a certain manner does not defeat the bona fide error defense, particularly in the context of a legal error. As the Sixth Circuit has explained: "The debt collector must only show that the violation was un-intentional, not that the [action] itself was unintentional. To hold otherwise would effectively negate the bona fide error de-fense."[24]

Johnson's other response is to argue that Riddle "should have realized" that his actions were in violation of the law.[25] This

---

**17.** 15 U.S.C. § 1692k(c).

**18.** *Johnson*, 305 F.3d at 1121.

**19.** *Id.* (emphasis added).

**20.** *Id.*

**21.** *Id.* at 1123.

**22.** *Caputo v. Professional Recovery Services, Inc.*, 261 F.Supp.2d 1249, 1257 (D.Kan.2003).

**23.** Memo. in Opp. to Riddle's Motion for Post–Remand Summary Judgment at 27 (hereinafter "Riddle Memo. in Opp.").

**24.** *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir.1998).

**25.** Riddle Memo. in Opp. at 27.

argument, however, rests on concepts of negligence—that is, whether a debt collector's actions were reasonable. Such concepts relate to whether an error was "bona fide"—the second prong of the defense—rather than to whether the error was intentional. For all these reasons, Riddle has established the first prong of the defense: that his error was unintentional.

### 2. The Error Was "Bona Fide"

### A. Riddle Reasonably Relied on State Trial Court Decisions

■ The next component of the defense is that the error must have been "bona fide." Again, the analysis from the Kansas District Court is helpful in setting the standards here. As that court explained: "In effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation. [A] court [must] consider[ ] ... whether a reasonable debt collector in the defendant's position would have appreciated that such conduct would be in violation of the Act." [26]

■ The undisputed facts here establish that a reasonable debt collector in Riddle's position would not have appreciated that he was violating the FDCPA when he filed suit against Johnson claiming, as one of two alternative theories, $250 in statutory fees under the Utah civil shoplifting statute. In June 1995, Riddle filed a test case in Utah state court, specifically requested oral argument, and successfully argued in favor of the shoplifting statute's application to bad-check writers. Following his success there, a number of Utah trial court judges awarded statutory fees for dishonored checks under the Utah shoplifting statute and no judge had ever ordered Riddle to refrain from filing such a claim.

Between 1995 and the time Riddle filed suit against Johnson in 1997, Utah state court judges Baldwin, Barrett, Hadfield, and Harris had all entered judgments awarding shoplifting fees for dishonored checks, as had Judge Michael K. Burton who was assigned Riddle's suit against Johnson.

Johnson points to events in the weeks just before the filing of suit against Johnson (on August 14, 1997) as evidence that Riddle knew that seeking shoplifting fees for a dishonored check was not "permitted by law." However, those events fail to raise any genuine issue of material fact which would preclude application of the bona fide error defense. At a meeting between Judge Burton, Judge Fratto, collection attorney Richard DeLoney, and Jesse Riddle, on June 24, 1997, Judge Fratto told Riddle that he "had some real problems ... with the shoplifting statute applying to a bad check." [27] However, it is undisputed that Judge Burton did not have a problem with the practice. Indeed, the reason for the meeting was apparently that Judge Fratto was newly appointed to the bench and disagreed with Judge Burton's established practice of awarding shoplifting penalties. In any event, it is undisputed that no decision was reached in that meeting and that Judge Fratto had promised to get back to Mr. DeLoney with a final decision. [28] While Riddle later testified that "I was very concerned that [the shoplifting statute] didn't apply to a bad check, that I didn't want to do it anymore," [29] the outcome of the June 24 meeting was uncertain, and Riddle had no reason to believe that he was legally foreclosed from seeking penalties under the shoplifting statute as an alternative claim for relief. As this

---

26. *Caputo*, 261 F.Supp.2d at 1257.

27. Riddle Dep., May 25, 2000, at 14.

28. *See* Fratto Dep., at 19–20; Burton Dep., at 13 and 32.

29. Riddle Dep., May 25, 2000, at 15.

court found in its initial·opinion in this case, there is "no evidence that Riddle ... violated any court order or that any state judge ever told him to stop ... filing such lawsuits." [30]

Johnson argues that before filing suit against her, Riddle had seen a group of default judgments obtained by another attorney in which Judge Burton had crossed out certain civil shoplifting penalties being sought and had handwritten the amounts of $135, $30, and $15 as "statutory penalties." However, it is undisputed that Riddle had no personal familiarity with those cases or judgments, that he only reviewed them in a cursory manner, and that he did not know why portions of the typed documents were crossed out, with various "statutory penalties" written in by hand.[31] Furthermore, the judgments were dated June 13, 1997—well *before* Riddle's June 27 meeting with judges Burton and Fratto where Judge Burton said he had not decided whether he would change his position with regard to the applicability of the civil shoplifting statute.[32] Riddle states that he did not understand from seeing those judgments that Judge Burton had changed his prior position, and given the other undisputed facts in the record, this court sees no basis for any inference to the contrary. It is undisputed that Riddle did not actually learn that the state court judges had changed their practice of granting shoplifting judgments against bad check writers until August 27, 1997—almost two weeks after he filed the suit against Johnson at issue here.[33]

Johnson also argues that this court had found the practice of seeking shoplifting penalties illegal in the *Ditty*[34] case on August 9, 1997—before Riddle sought shoplifting penalties against her. This is a grossly inaccurate statement of *Ditty*'s holding. *Ditty* granted summary· judgment on the practice of "attempt[ing] to collect greater than $15.00 through the 'covenant not to sue' practice,"[35] not on the practice of suing for civil shoplifting penalties as in this case. Similarly inapplicable is this court's opinion in *Scott v. Riddle*, 2000 WL 33980013 (D. Utah 2000)[36]—decided in 2000, well after the suit at issue in this case was filed. *Scott* dealt with collection practices under *Washington* state law. Moreover, this court's opinion in *Scott* pre-dated the Tenth Circuit's recent pronouncement in this case regarding the bona fide error defense. Without the guidance provided by the Tenth Circuit's decision, the opinion incorrectly limited the bona fide error defense to clerical errors and refused to apply it to mistakes of law.[37] In sum, none of the previous decisions from this court squarely addressed whether the filing of a complaint seeking shoplifting fees for a dishonored check under Utah law was "permitted by law" for FDCPA purposes.

Johnson's most rhetorically powerful argument is to repeatedly quote part of the Tenth Circuit's opinion in this case, which states "[w]e find it *unmistakably* clear from the text of Utah statutory law that shoplifting penalties are unavailable in the collection of dishonored checks" and that the "statute *unambiguously* states that

---

**30.** Initial Order, at 9, n. 11.

**31.** *See* Riddle Declaration in Support of Summary Judgment (hereinafter "Riddle MSJ Decl."), ¶ 37.

**32.** *Id.*

**33.** Riddle MSJ Decl. ¶ 40.

**34.** *Ditty v. CheckRite, Ltd., Inc.,* 973 F.Supp. 1320 (D.Utah 1997).

**35.** *Id.* at 1328.

**36.** No. 2:99–CV–00042, 2000 WL 33980013 (D.Utah, Dec. 4, 2000).

**37.** *Id.*

the holder of a dishonored check is permitted to collect 'a service charge that may not exceed $15.' " [38] Johnson contends that such language constitutes a determination by the Tenth Circuit that Riddle's mistaken assessment of the situation was not bona fide. While the argument has some superficial appeal, careful inspection proves it illusory. The Circuit's conclusion about the "unmistakable" and "unambiguous" debt collection statute comes on the heels of a long chain of reasoning—reasoning, it seems relevant to note, that lead to the reversal of an extensive opinion by this court. That chain included several links. The Circuit first had to determine the breadth of the FDCPA prohibition of debt collection practices that were not "permitted by law." [39] The Circuit observed that only "sparse case law" had analyzed the permitted-by-law provision.[40] Applying that limited case law and its own careful reading of the Act, the Circuit reversed this court's conclusion that the "permitted by law" safe harbor simply meant authorized by lower state trial court decisions. The Circuit concluded instead that the appropriate approach is to apply an *Erie* analysis [41]—that is, to determine what the Utah Supreme Court had ruled on this issue or, in the absence of a direct ruling, to predict what the Utah Supreme Court would rule if it were faced with the question. The Circuit then noted that "[t]he Utah Supreme Court never has addressed the applicability of the shoplifting statute to writers of dishonored checks." [42] While lacking controlling authority, the Circuit went on to predict how that court would rule if it were faced with the issue. Because Utah case law holds that specific statutes trump general ones, the Circuit concluded that it was "unmistakably clear" that the specific limitations in the dishonored check statute would take precedence over the general provisions of the shoplifting statute.

As this recitation of the legal reasoning underlying the Circuit's published decision reveals, the issues presented by this case are not simple. To the contrary, they involve questions on which reasonable minds can, and have, differed. Indeed, state judges Baldwin, Barrett, Burton, Hadfield, and Harris had all seemingly agreed with Riddle's position (not to mention a judge on this court, who at least suggested that the position was reasonable). Ultimately, the Circuit did not preclude a finding that Riddle's position was bona fide, but rather remanded the case on that very point.

In light of this complexity and the various state lower court decisions supporting Riddle's position, this court finds that Riddle's filing of a complaint seeking shoplifting penalties from Johnson was bona fide error. A reasonable debt collector in Riddle's position as of August 24, 1997 would not have realized that he was violating the Act by seeking such shoplifting penalties under Utah law.

### B. The FDCPA Should Not Be Construed to Restrict Attorneys' Ethical Obligations

 The conclusion that Riddle's position was bona fide is supported by another separate reason: a finding of personal liability in cases like this would create a conflict between the FDCPA and attorneys' ethical obligations. In filing an action seeking, as an alternative theory, civil

---

**38.** *Johnson,* 305 F.3d at 1120 (emphasis added) (internal citations and emphasis omitted).

**39.** *See id.* at 1117 (discussing 15 U.S.C. § 1692f(1)).

**40.** *Id.* at 1119.

**41.** *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**42.** *Johnson,* 305 F.3d at 1119.

shoplifting penalties against Johnson, Riddle was providing legal services to a client—7–Eleven. Rule 1.3 of the Utah Rules of Professional Conduct requires lawyers to "act with reasonable diligence ... in representing a client." This rule requires Utah attorneys to act "with zeal in advocacy upon the client's behalf." [43] As the Tenth Circuit has recognized, if an attorney could be held liable for acting with zeal to collect a debt on a legally flawed theory, she would be placed "between the proverbial rock and hard place." [44] In one case cited by the Tenth Circuit involving an attorney sued under the FDCPA, the U.S. District Court for the Southern District of Ohio explained that a bona fide error defense to FDCPA actions must be available to attorneys who make mistakes of law because otherwise, "[i]f a lawyer who in good faith asserts a claim in litigation may be held personally liable under the FDCPA, then he or she is presented with an irreconcilable ethical dilemma." [45] As one commentator has noted, "[e]thical duties to the client require the assertion of the client's best case. This collides with strict liability if the legal argument loses." [46]

The Supreme Court suggested this same point in *Heintz v. Jenkins,*[47] the case which established that the FDCPA applies to attorney debt-collectors.[48] In *Heintz* the Supreme Court rejected the claim that reading the FDCPA to reach litigating lawyers would produce anomalous results.

Heintz (the lawyer-defendant in the case) pointed to § 1692e(5) of the Act, which forbids a "debt collector" from making any "threat to take action that cannot legally be taken." Heintz argued that were this language in the Act to apply directly to litigation activities, any litigating lawyer who brought, and then lost, a claim against a debtor would be strictly liable. The Supreme Court found this contention unconvincing based on the existence of the bona fide error defense. As the court explained:

> [T]he Act says explicitly that a "debt collector" may not be held liable if he "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." § 1692k(c). Thus, even if we were to assume that the suggested reading of § 1692e(5) is correct, we would not find the result so absurd as to warrant implying an exemption for litigating lawyers. In any event the assumption would seem unnecessary, for we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an "action that cannot legally be taken." [49]

The Supreme Court discussed the congressional history surrounding the application of the FDCPA to lawyers. Initially, the Act contained an express exemption for lawyers.[50] In 1986, Congress amended

43. Comment, Rule 1.3, Utah R. Professional Conduct.

44. *Johnson,* 305 F.3d at 1123 (quoting Janet Flaccus, *Fair Debt Collection Practices Act: Lawyers and the Bona Fide Error Defense,* 2001 ARK. L. NOTES 95, 97 (2001)).

45. *Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A.,* 74 F.Supp.2d 761, 764 (S.D.Ohio 1999).

46. Janet Flaccus, *Fair Debt Collection Practices Act: Lawyers and the Bona Fide Error Defense,* 2001 ARK. L. NOTES. 95, 97 (2001).

47. 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

48. *See Johnson,* 305 F.3d at 1123 (discussing *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)).

49. *Id.* at 295–96, 115 S.Ct. 1489.

50. *Id.* at 294, 115 S.Ct. 1489 (citing Pub.L.

the Act to remove the language containing the exemption. There appears to be scant legislative history surrounding the reasons for the removal of this language. Indeed, one of the sponsors of the legislation, Congressman Frank Annuzio, stated that the limited effect of the removal was to cover lawyers only in their debt collection activities, not their legal activities:

> [A]n estimated 5,000 attorneys are now involved in debt collection. Repeal of the exemption was intended to place attorney collectors and lay collectors on an equal footing. It ensures that attorneys use fair debt collection tactics. It ensures that lay collectors, who are required by the act to refrain from using abusive tactics, are not competitively disadvantaged by the act.
> *Ethical attorneys need have no concerns about the impact of the act on their practice.* The Fair Debt Collection Practices Act regulates debt collection, *not the practice of law.* Congress repealed the attorney exemption to the act, not because of attorney's conduct in the courtroom, but because of their conduct in the backroom. Only collection activities, not legal activities, are covered by the act. Some attorneys have claimed that the act will restrict their ability to practice law. Nothing could be further from the truth. The act applies to attorneys when they are collecting debts, not when they are performing tasks of a legal nature.
> Suggestions that the repeal of the attorney exemption prohibits bringing legal action is an absurd reading of the act. The act only regulates the conduct of debt collectors, it does not prevent creditors, through their attorneys, from pursuing any legal remedies available to them.[51]

The Supreme Court found this statement unpersuasive on the issue of whether the FDCPA covered litigation activities, as it was made three months after the passage of the amendment and represented the views of only one person.[52] But the passage does suggest caution before quickly imputing to Congress the intent to alter long-standing ethical obligations of attorneys who pursue legal actions to collect debts.

In noting attorneys' ethical obligations to advance their clients' interests, the court in no way concludes that lawyers have the "green light" to pursue any theory they want. To the contrary, lawyers obligations to pursue the interests of clients are circumscribed by various limitations. Most relevant here is the "Rule 11" requirement, found in the state (and federal) rules,[53] that attorneys can only pursue claims consistent with Utah law, or at the very least consistent with a reasonable argument for extension, modification, or reversal of existing Utah law. In this case, the court reaches the legal conclusion that Riddle's actions clearly complied with Rule 11 of the Utah Rules of Civil Procedure. As a Utah attorney, Riddle had a good faith basis to file suit seeking shoplifting fees where 1) he pleaded in the alternative for fees permitted under the bounced check statute; 2) several state court judges had previously assessed shoplifting fees for bounced checks; and 3) the Utah Supreme Court had never addressed the issue. The Tenth Circuit has now predicted that, were the Utah Supreme Court to reach the issue, Riddle's claim would be rejected. But that holding, which the

---

95–109, § 803(6)(F), 91 Stat. 874, 875).

**51.** 132 Cong.Rec. 30842 (1986) (emphases added), *quoted in part in Heintz,* 514 U.S. at 297, 115 S.Ct. 1489.

**52.** 514 U.S. at 298, 115 S.Ct. 1489.

**53.** *See* Rule 11, Utah R. Civ. Proc.; Rule 11, Fed. R. Civ. Proc.

court scrupulously follows here, does not mean that Riddle operated outside Rule 11 in pursuing the theory.

Rule 11 has been mentioned previously by this court and the Tenth Circuit in earlier rulings in this case. Both courts have rejected the argument that the "permitted by law" safe harbor extends to any non-sanctionable legal argument. As the Circuit explained, "[W]e agree with the district court that the 'permitted by law' inquiry demands application of state substantive law, not Rule 11." [54] This conclusion is almost self-evident, as what is "permitted by law" must mean what is *actually* permitted by law, not what is *arguably* permitted by law. But the issue, as it relates to the bona fide error defense, is entirely different. Because the defense encompasses legal errors, it necessarily extends beyond what is actually permitted by law into the realm of what is arguably permitted by law. The court need not decide whether the bona fide error defense automatically extends to the outer boundaries of Rule 11 in all cases. Instead, the court simply concludes that in this case, the undisputed facts show that Riddle's pursuit of a mistaken legal theory qualifies as a bona fide error where he complied with Rule 11.

### 3. Riddle Had Adapted Reasonable Procedures to Avoid Such Error

■ Having established the first two components of the bona fide error defense, Riddle must finally establish that he maintained procedures reasonably adapted to avoid the error committed in this case. Johnson does not seem to seriously contest

this prong. The court finds that Riddle adopted several procedures, both general and specific—all of which were reasonably adapted to avoid the mistake of law committed in this instance.

Riddle's debt collection practice is substantial, and he has been an active member of the debt collection industry. He is considered a national expert on the FDCPA and "spends much of his time giving seminars to the collection industry." [55] Riddle's FDCPA compliance policies and procedures are continually updated as new court decisions and FTC opinions are issued on the FDCPA, and FDCPA compliance, testing, and seminar attendance are all conditions of employment at Riddle's firms. [56] In addition, it has been Riddle's practice to have an attorney assigned to monitor FDCPA compliance. [57]

With regard to the specific error in this case, it is undisputed that Riddle "had policies and procedures implemented in June 1997 that guided his attempts to collect shoplifting penalties from check writers." [58] In response to a client's request, Riddle performed a detailed legal analysis of the possible application of Utah's shoplifting statute to bad-check writers, as reflected in an opinion letter to one of his clients, dated May 12, 1995. [59] Then, in June 1995, Riddle filed a "test case" in Judge Burton's court to determine whether Utah courts would allow application of the shoplifting statute to claims based on dishonored checks. After the defendant failed to respond, Riddle submitted a motion for default judgment, but called the court clerk to request that Judge Burton review the complaint which called for extension of the statutory fees available under the shoplifting statute [60] to apply

---

**54.** *Johnson*, 305 F.3d at 1118.

**55.** Johnson Memorandum in Opposition to Summary Judgment, at 2, ¶ 3.

**56.** *See* Riddle MSJ Decl., ¶¶ 6–9, 11.

**57.** *Id.* at ¶ 10.

**58.** Johnson Memorandum in Opposition to Summary Judgment, at 5, ¶ 4.

**59.** Riddle MSJ Decl. ¶¶ 13–15.

**60.** *Utah Code Ann.* § 78–11–15.

where a dishonored check had remain unpaid.[61] At a July 12, 1995 hearing, Riddle discussed the issue with Judge Burton for about thirty minutes, after which Judge Burton decided to grant default judgment under the shoplifting statute in favor of Riddle's client.[62] As mentioned previously, over the next two years several state court judges entered similar default judgments in similar cases. After becoming aware of Judge Fratto's concerns in June 1997 over the applicability of the shoplifting statute to dishonored check situations, Riddle called Judge Fratto asking for a final decision before filing suit against Riddle in August 1997.

The court finds that Riddle's general approach to the FDCPA—as well as the more specific approach in this case—were procedures reasonably adapted to avoid the error of legal mistake that occurred in this instance. The filing of a "test case" to determine the parameters of state law is a quintessential example of a procedure reasonably adapted to avoid error—in the context of this case, it was specifically designed to avoid legal error under the FDCPA.

Accordingly, the court finds that the undisputed facts demonstrate that Riddle is entitled to summary judgment on his bona fide error defense and grants summary judgment for Riddle on the FDCPA claims against him.

### STATE LAW CLAIMS

After summary judgment is granted on the FDCPA claims, the only remaining claims before the court are state law claims. Riddle has moved for dismissal of all these claims. Johnson does not oppose dismissal of her claims for conversion, civil conspiracy, and violations of *Utah Code*

*Ann.* § 7–15–1 and § 78–51–31. Accordingly, these claims are dismissed with prejudice. As to the remaining state law claims (violation of the Utah Consumer Sales Practices Act, intentional infliction of emotional distress, etc.), the court declines to exercise jurisdiction. These state law claims are better addressed in the first instance by the state courts.[63]

### CONCLUSION

Riddle has successfully established the bona fide error defense and he therefore cannot be held liable to Johnson under the FDCPA. Johnson's FDCPA claim is accordingly dismissed with prejudice. State law claims for conversion, civil conspiracy, and violations of *Utah Code Ann.* § 7–15–1 and § 78–51–31 are dismissed with prejudice. Any remaining state law claims are dismissed without prejudice. Based on the foregoing, the court GRANTS Riddle's motion for summary judgment (# 163–1) as to the federal claim against him under the FDCPA. Because Riddle is not liable to Johnson under federal law, Johnson's motion for class certification (# 66–1) is DENIED as moot. Johnson's motion for summary judgment (# 160–1) is also DENIED. The clerk of the court is directed to close this case.

---

61. Riddle MSJ Decl. ¶¶ 21.

62. *Id.* at ¶ 21.

63. *See Bauchman for Bauchman v. West High School*, 132 F.3d 542 (10th Cir.1997), *cert. denied*, 524 U.S. 953, 118 S.Ct. 2370, 141 L.Ed.2d 738 (1998).