OPINION
{¶ 1} Appellant, Lisa Barclay, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellee, the Bank of New York, in a foreclosure action filed by appellee.
 {¶ 2} Appellee, as trustee, is the owner and holder of a note and mortgage executed by appellant. Claiming default on the note for failure to make payments as required under its terms, appellee filed a foreclosure complaint against appellant on January 3, 2003, alleging an amount due on the note of $54,429.31 plus interest. Appellant did not file an answer to the complaint, and appellee subsequently filed a motion for summary judgment on June 24, 2003. In support of the motion for summary judgment, appellee attached a copy of the note and mortgage, the affidavit of its agent stating that the note was in default and that an attached record of payments substantiating the default was accurate, and a printout showing the delinquent account history. Appellant did not file a responsive pleading as such to the motion for summary judgment, but filed on July 23, 2003, a pleading entitled "Notice of non-waiver of unalienable rights and notice of criminal activity." No conventional evidentiary materials or affidavits of the type contemplated by Civ.R. 56 were attached, although appellee apparently took the precaution of nonetheless treating this as a memo in opposition to summary judgment and accordingly filed a reply memo thereto. This pleading filed by appellant contained only general averments of illegal conduct and lack of standing on the part of appellee, and assertions of lack of jurisdiction in the trial court.
 {¶ 3} The trial court granted summary judgment in favor of appellee on July 24, 2003. Appellant thereafter filed a belated motion to strike appellee's motion for summary judgment. This motion to strike, being filed after the fact, was never ruled upon by the trial court.
 {¶ 4} Appellant filed a timely notice of appeal from the trial court's judgment. This court then granted, over appellee's objection, a stay in disposition of the foreclosed property pending outcome of appellant's appeal. This court subsequently disqualified the supersedeas bond posted by appellant and lifted the stay because it appeared that the person acting as surety on the bond, Ajamu Kafele, had held himself out as an appellant in the present matter and could not qualify as a surety.
 {¶ 5} Appellant brings the following assignments of error:
I. The Trial Court erred to the prejudice of Defendants-Appellants when it entered judgment for foreclosure and sale of the property for benefit of Plaintiff where there is a Lis Pendens in place by the Defendants requiring that the status quo of the property be maintained and not sold.
II. The Trial Court erred to the prejudice of Defendants-Appellants when it entered judgment for foreclosure for Plaintiff and the Plaintiff is not holder in due course of a claim against Defendants or the subject property, and one entitled to enforce an instrument.
III. The Trial Court erred to the prejudice of Defendants-Appellants when it entered judgment for foreclosure for Plaintiff without allegation and evidence of an economic injury from the supposed breach of contract.
IV. The Trial Court erred to the prejudice of Defendants-Appellants when it entered judgment for foreclosure for Plaintiff while the Defendants were not subject to debt collection action by the Attorney-Debt Collector on behalf of the Plaintiff pursuant to the rights, privileges, and immunities enumerated in the Fair Debt Collection Practices Act-15 U.S.C. § 1692 et seq.
V. The Trial Court erred to the prejudice of Defendants-Appellants when it entered judgment for foreclosure to deprive Defendants of their property interest without affording them due process and equal protection of law and denied Defendants their rights, privileges, immunities under, not limited to, the U.S. Constitution.
 {¶ 6} Also pending before us are multiple motions subsequently filed by the parties in this appeal, all of which will be considered in connection with the merits.
 {¶ 7} We note initially that this matter was decided by the trial court on summary judgment. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. MidwesternIndemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id. Once the moving party satisfies its initial burden to bring forth evidence of the absence of a genuine issue of material fact on essential elements of the case, the nonmoving party assumes a reciprocal burden of showing that there remains a material issue of fact for trial. Id.
 {¶ 8} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co.
(1995), 106 Ohio App.3d 440, 445. As such, we may affirm the trial court's judgment if the record supports any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard v. Society Natl. Bank (Sept. 10, 1998), Franklin App. No. 97APE11-1497.
 {¶ 9} In addition, we are constrained in this matter by the fact that the scope of our review on appeal is confined to matters within the record transmitted from the trial court. App.R. 12(A) and App.R. 9; Lamar v. Marbury (1982),69 Ohio St.2d 274. This court accordingly can take no notice of facts or circumstances brought to our attention by means of affidavits or other evidence not appearing in the record and before the trial court at the time it rendered its judgment.
 {¶ 10} Appellant's first assignment of error asserts that, as a matter of law, the doctrine of lis pendens would apply to bar pursuit to judgment of the foreclosure action. The doctrine of lis pendens, codified at R.C. 2703.26, states that "[w]hen summons has been served or publication made, the action is pending so as to charge third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title." The general intent and effect of the doctrine of lis pendens is to charge third persons with notice of the pendency of an action, and to make any interest acquired by such third persons subject to the outcome and judgment or decree of the pending lawsuit. A person acquiring property subject to lis pendens thus takes the property subject to the final outcome of the action, and is as conclusively bound by the result of litigation as if the third party had been a party to the litigation from the outset. Cookv. Mozer (1923), 108 Ohio St. 30; Martin, Rochford and Durr v.Lawyer's Title Ins. Corp. (1993), 86 Ohio App.3d 20, 22. In order for lis pendens to apply, three elements must be met: "(1) the property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the res; and (3) the property or res involved must be sufficiently described in the pleadings." Cook, at 37.
 {¶ 11} It is undisputed in the present case that appellant, in the sole pleading she filed with the trial court prior to summary judgment, included a copy of two notices of lis pendens issued by the United States District Court for the Southern District of Ohio pursuant to actions pending in that court, and that the property at issue in the present case is described in these notices. However, no further description of the nature of the federal court actions, such as whether they were brought in rem or in personam, the identity and positions of the parties, or the current status of the cases, was furnished to the trial court prior to judgment. Appellant now asserts that one lis pendens resulted from an in rem action concerning the property and that the case of Huntington Mortgage Co. v. Shanker (1993),92 Ohio App.3d 144, demonstrates that the state court foreclosure action should not have proceeded because of the previous in rem jurisdiction invoked by the federal court. Appellee responds with the assertion that these lis pendens notices were irrelevant to the proceedings in the foreclosure action because they were issued pursuant to a bankruptcy action in which no stay was ever granted, and which, moreover, has subsequently been dismissed. However, all this belated information, while appearing to coincide at least with the style of one of the two federal actions, was not, as is the case with so much of the information that the parties now seek to place before us, timely offered before the trial court and thus will not be considered in our review of summary judgment.
 {¶ 12} Based only on the information and evidence properly raised before the trial court in support of or in opposition to summary judgment, we find that the doctrine of lis pendens would not bar judgment in favor of appellee in this foreclosure action. The doctrine of lis pendens does not substitute for, and is not analogous to, a stay of all transfers or dispositions of subject property; rather, the statute provides that "no interest can be acquired by third persons in the subject of the action, asagainst the plaintiff's title." R.C. 2703.26. (Emphasis added.) No authority can be found for the proposition that lis pendens would bar all transfers of property once litigation concerning the property is undertaken; rather, subsequent purchasers may find their interest in the property subject to the outcome of the pending action. The doctrine in most circumstances is one of constructive notice, rather than one of automatic stay.Sutterfield v. Sutterfield (July 30, 1993), Adams App. No. CA545. We accordingly find that on these facts the notices of lis pendens, of themselves, would not bar summary judgment in favor of appellee, and appellant's first assignment of error is overruled.
 {¶ 13} Appellant's second assignment of error asserts that appellee is not a holder in due course of the note and mortgage, and thus could not bring the action for foreclosure thereunder. The documents submitted by appellee in support of summary judgment, including the note, mortgage, and affidavit, established that appellee met the elements under R.C. 1303.31 to be a holder in due course. Appellant filed no evidentiary materials, apart from abundant argument by way of affidavit, to rebut the evidence presented by appellee that it was in fact a holder in due course entitled to enforce the instruments. A party cannot avoid summary judgment solely by submitting a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party. Bell v. Beightler, Franklin App. No. 02AP-569, 2003-Ohio-88. As such, a party's unsupported and self-serving assertions, offered by personal affidavit and without corroborating evidentiary materials permitted under Civ.R. 56(E), will not be sufficient to demonstrate a material issue of fact precluding summary judgment. Id. Of course, this is all the more evident when such self-serving assertions regard matters outside the personal knowledge of the affiant, and are thus not the proper subject of an evidentiary affidavit at all. Id.
 {¶ 14} Examining the materials that were before the trial court in its consideration of summary judgment, we find that the trial court correctly concluded that there remained no genuine issue of material fact as to whether appellee was a holder in due course of the instruments at issue, and appellant's second assignment of error is accordingly overruled.
 {¶ 15} Appellant's third assignment of error asserts that there remained a material issue of fact because appellee failed to establish that it was entitled to recover damages from appellant. To the contrary, appellee established that it was the holder of the note, that the note was in default, and that appellant had executed the note in favor of appellee's predecessor in interest. Once again, appellant presented no evidence in rebuttal. To the extent that appellant appears to argue that some form of damages must be shown beyond mere default on the note, no authority is supplied to support this proposition, and appellant does not explain why such damages would be anything more than redundant or superfluous to appellee's simple right to recover on the note once default occurred. There accordingly remain no genuine issue of material fact as to such damages and appellant's third assignment of error is overruled.
 {¶ 16} Appellant's fourth assignment of error asserts that the trial court erred in finding that appellee was entitled to judgment as a matter of law, because appellee or its attorney was in violation of the Fair Debt Collections Practices Act, Section 1692a et seq., Title 15, U.S. Code ("FDCPA"), and this violation barred judgment against appellant. The specific provisions at issue are those concerning a requirement that a debt collector furnish verification of the amount and origin of the debt upon demand by the debtor, and that, until such verification is provided, the debt collector must cease collection activities. Section 1692g, Title 15, U.S.Code. Appellant asserts that the present foreclosure action should have been precluded, or at least that her obligation to answer the foreclosure complaint should have been stayed, because counsel for appellee failed to comply with the requirements of this section:
(a) Notice of debt; contents
Within five days after the initial communication with a consumer in connection with the collection of any debt a debt collector shall, unless the following information is contained in the initial communication * * * send the consumer a written notice containing —
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
* * *
(4) a statement that if the consumer notifies the debt collector in writing within [a] thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of the verification of such debt or judgment shall be mailed to the consumer by the debt collector; and
(5) a statement that * * * the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
(b) Disputed debts
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.
Section 1692g, Title 15, U.S.Code.
 {¶ 17} The statute thus explicitly provides that once the debtor has disputed in writing the validity of the debt, the debt collector may not proceed with "collection" until appropriate verification or validation of the debt is provided by the debt collector to the debtor. At least one court has concluded that the statute's mandate to cease collection activities includes a suspension of litigation, or at least an automatic extension of time for the defendant debtor to file an answer to the complaint until the proper verification pursuant to Section 1692g is provided. In re Martinez (S.D.Fla. 2001), 266 B.R. 523, 540. However, we note that the bankruptcy court's conclusion in this respect was at the very least questioned, if not adversely ruled upon, by the district court upon appeal. In re Martinez
(S.D.Fla. 2001), 271 B.R. 696, affirmed, In re Martinez (2002),311 F.3d 1272.
 {¶ 18} A brief general overview of the FDCPA places the section in context. The stated purpose of the Act is to eliminate abusive debt collection practices, Section 1692e, Title 15, U.S. Code, and to that end the Act prohibits certain actions by debt collectors, such as improper communications, harassing or oppressive behavior, and false or misleading representations, as well as imposing other restrictions and obligations on debt collectors, such as the verification requirement of Section 1692b. Sections 1692c, 1692d, and 1692e, Title 15, U.S.Code.
 {¶ 19} Application of the FDCPA, however, is limited to consumer debt:
The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or householdpurposes, whether or not such obligation has been reduced to judgment.
Section 1692a(5), Title 15, U.S.Code. (Emphasis added.)
 {¶ 20} Even where the underlying debt is consumer debt, the FDCPA applies only to "debt collectors" as defined, and not to actual creditors or bonafide assignees:
"The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors * * *." "Thus, actual creditors — the extenders of credit or bona fide assignees — generally are not subject to the Act."
Huntington National Bank v. Metzenbaum (Nov. 12, 1998), Cuyahoga App. No. 73723, quoting Meads v. Citicorp CreditServices, Inc. (S.D.Ga. 1988), 686 F. Supp. 330, 333. "The [FDCPA] is quite clear that it is directed at independent debt collectors and not creditors attempting to collect on their own debts." Beck v. Alliance Funding Co. (D.Conn. 2000),113 F. Supp.2d 274, 275.
 {¶ 21} Section 1692a(6), Title 16, U.S. Code defines a "debt collector" as any person who uses interstate commerce "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The term, however, does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor[.]" Id. Not surprisingly, attorneys acting as debt collectors in the common sense of the term, e.g., purchasing accounts for collection, are not exempt from the Act merely by virtue of being attorneys. Green v.Hocking (1992), 792 F. Supp. 1064. Somewhat paradoxically, however, the Supreme Court of the United States has unequivocally stated that attorneys attempting to collect a debt are subject to the FDCPA even where the attorney is engaging in litigation inrepresentation of the creditor, at least where the attorney "regularly" engages in collection litigation. Heintz v. Jenkins
(1995), 514 U.S. 291, 115 S.Ct. 1489.
 {¶ 22} It is unclear whether, as appellant asserts in the case before us, a creditor who would otherwise be unfettered by the FDCPA would become subject to its restrictions by virtue of employing an experienced collections firm to initiate litigation, as the holding in Heintz at least implicitly suggests: A litigation attorney subject to the FDCPA might be bound by Section 1692g(b) to cease collection efforts until a debt was verified pursuant to that section, and as a result that cessation might arguably be imposed de facto on the client creditor as well. Elsewhere in Heintz, however, can be found language perhaps at odds with application of the holding of the case to Section 1692g; the court appeared to indicate that it did not anticipate that its ruling that litigation attorneys be treated as debt collectors could be read to allow immediate suspension of litigation upon demand of the debtor:
It would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. * * *
Heintz, at 296. No court appears to have addressed this apparent contradiction on facts similar to those before us.
 {¶ 23} Resting on the somewhat shifting sands of this statutory background, the substance of appellant's argument invoking the FDCPA is the following: (1) the obligation giving rise to this foreclosure action is consumer debt subject to the Act; (2) counsel for appellee is a "debt collector" under the Act; (3) counsel failed, at some point, to provide a timely validation of debt pursuant to Section 1692g(b), Title 15, U.S. Code, after appellant had provided the appropriate written notice that the debt was disputed; (4) Section 1692g(b)'s requirement that the debt collector "cease collection" until the appropriate verification is provided to the consumer applies to the initiation or prosecution of litigation by appellee, based on the actions of appellee's counsel; and (5) operation of the statute under these circumstances either deprived the trial court of jurisdiction to entertain the foreclosure action, or stayed proceedings in the action to the extent even of relieving appellant of her obligation to answer the foreclosure complaint.
 {¶ 24} Two issues are therefore before us: does the FDCPA operate to preclude judgment in favor of a creditor under circumstances in which counsel for the creditor has allegedly failed to comply with provisions of the FDCPA while acting as a "debt collector" and then subsequently acted in the role of litigation counsel in filing a foreclosure action, and, if so, whether this argument was properly brought to the attention of the trial court with supporting evidence to warrant application in the trial court to preclude judgment against appellant. Answering the second question in the negative, we do not resolve the first in this opinion and leave that question to a court equipped with a fully developed record on the issue.
 {¶ 25} Accepting, arguendo, appellant's proposition that Section 1692g(b), Heintz and Martinez operated to bar initiation of litigation against her, or stay it once initiated, appellant, in light of her burden under Civ.R. 56(C) andDresher, supra, to rebut appellee's evidence indicating that it was entitled to judgment as a matter of law, was required to set forth both her legal argument under the FDCPA and a certain number of facts substantiating application of the Act to this case. In particular, appellant was held to show that she was a "consumer" with respect to this particular debt, that a written request pursuant to Section 1692g(b), Title 15, U.S. Code had been made for verification of the debt, and that no appropriate response thereto had been furnished by counsel for appellee prior to filing the complaint.
 {¶ 26} A review of the sole responsive pleading filed by appellant prior to the trial court's grant of summary judgment in this case reveals that this argument was insufficiently raised and supported for the trial court, and would not have precluded summary judgment.
 {¶ 27} The sole pleading filed by appellant, although paragraphed and attested as a purported affidavit, consists largely of argument. Even if one treats, to appellant's benefit, certain factual averments therein as evidentiary materials fitting the requirements of Civ.R. 56(C), there simply is insufficient factual material to place the FDCPA issue properly before the trial court as a bar to summary judgment in favor of appellee. At various points, the pleading mentions Martinez, the lack of jurisdiction (or suspension of a defendant's obligation to file an answer) which Martinez allegedly stands for, and Section 1692g(b), Title 15, U.S.Code. The affidavit does not allege that a request in compliance with Section 1692g(b) was submitted by appellant to counsel for appellee, that counsel failed to respond with a verification meeting the requirements of the statute, or even that the underlying debt in this case meets the requirements of the Act as "consumer debt" and is subject to the provisions thereof.[1] Based upon those materials in front of the trial court at the time of summary judgment, appellant had not placed sufficient evidentiary materials before the trial court to create an issue of material fact or demonstrate that appellee was not entitled to judgment as a matter of law, and appellant's fourth assignment of error is accordingly overruled.
 {¶ 28} Appellant's fifth assignment of error asserts that the trial court's decision is volative of her constitutional due process and equal protection rights. Most of these arguments are based upon propositions of law discussed and rejected previously in this opinion. Appellant raises no coherent issue of subject matter jurisdiction (other than the lis pendens and FDCPA claims rejected above) and makes only general allegations that the mechanism of summary judgment, of itself, deprived her of an opportunity to have a hearing, which she appears to argue could only be constituted by having her day in court before a jury. It is well-settled that the mechanism of summary judgment, applied appropriately under reasonable conditions and procedures, does not violate a party's right to trial by jury. Sartor v. ArkansasNational Gas Corp. (1944), 321 U.S. 620, 64 S.Ct. 724.
 {¶ 29} Finally, appellant argues that there is a conflict of interest because of certain pending actions filed by appellant in the United States District Court against Franklin County and the court of common pleas, and that the judge in the trial court should accordingly have been disqualified. This court lacks authority to pass upon disqualification of a judge, as that authority is vested solely in the Chief Justice of the Supreme Court of Ohio pursuant to Section 5(C), Article IV, Ohio Constitution and R.C. 2701.03. This issue is therefore not one that can be addressed in this appeal.
 {¶ 30} In summary, appellant has thus failed to raise any meritorious issues regarding violation of her constitutional right to due process and equal protection under the law with respect to proceedings in the trial court, and appellant's fifth assignment of error is overruled.
 {¶ 31} We now turn to a series of motions filed by parties in the present appeal. Appellee has filed motions to disqualify Ajamu Kafele as a party appellant in this appeal and to strike his name from the pleadings. Mr. Kafele was not named as a party defendant in appellee's complaint in the trial court, and at no time moved to be joined in any capacity in the trial court or before this court. Mr. Kafele's name does appear on the notice of appeal from the trial court's judgment, and his signature appears on the briefs. In addition, Mr. Kafele was inadvertently allowed to personally argue the matter at oral argument.
 {¶ 32} An appeal will lie only on behalf of a party aggrieved by the final judgment appealed from. Ohio Contract CarriersAssn., Inc. v. Pub. Util. Comm. (1942), 140 Ohio St. 160. An "aggrieved party" is one whose interest in the subject matter of the litigation is "immediate and pecuniary, and not a remote consequence of the judgment." Id. at 161. Thus, in order to demonstrate standing to appeal, a party must be able to demonstrate a present interest in the subject matter of the litigation that has been prejudiced by the judgment appealed from. Willoughby Hills v. C.C. Bar's Sahara, Inc. (1992),64 Ohio St.3d 24, 26. A future, contingent, or speculative interest is not sufficient to confer standing to appeal. Ohio ContractCarriers Ass'n., at 161; Midwest Fireworks Manufacturing Co.,Inc. v. Deerfield Twp. Bd. of Zoning Appeals (2001),91 Ohio St.3d 174.
 {¶ 33} The injury or prejudice alleged by Mr. Kafele in the present case devolves from a purported unwritten agreement under which he holds a one-half interest in appellant's real property. He does not allege that he was a party to the note, that his name appears upon title to the property, or that he was otherwise a necessary party either to the action in the trial court or to this appeal. Considering that such an unwritten interest in real property would be unenforceable under the statute of frauds and that Mr. Kafele has alleged no personal liability on the underlying debt, we find that as the case is now postured, any interest asserted by Mr. Kafele is too tenuous to confer standing upon him in the present appeal. Appellee's motions to strike Mr. Kafele's name from the filings and clarify that he does not have status as an appellant in this case are accordingly granted. The court further cautions Mr. Kafele that continued participation in this appeal or companion cases under these circumstances, i.e., where he lacks either status as a pro se appellant or as a licensed attorney, places him at risk of further examination of his conduct to determine whether it constitutes the unauthorized practice of law.
 {¶ 34} Appellant has filed a motion to strike appellee's motion to exclude Mr. Kafele from the proceedings, and an accompanying motion for sanctions. Both are overruled. In addition, appellant has filed a motion to reconsider our previous journal entry by which we vacated a bond and stay in this matter. Our disposition of the appeal renders this motion moot.
 {¶ 35} In accordance with the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment for appellee is affirmed.
Judgment affirmed; appellee's motion to disqualify Mr. Kafele as a party is sustained; appellant's motion to strike appellee's motion is overruled; appellant's motion for sanctions is overruled and appellant's motion to reconsider our previous journal entry is rendered moot.
Petree and Klatt, JJ., concur.
WRIGHT, J., retired, of the Supreme Court of Ohio, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Although a subsequent pleading filed after the trial court rendered judgment in this case did more coherently set forth this argument, the trial court was not obligated to take notice of this belated filing after it had rendered judgment. Subsequent filings are not a basis for this court to overturn the trial court's judgment that was based solely on timely filings and, at best, these subsequent filings constitute grounds for appellant to bring a Civ.R. 60(B) motion for relief from judgment in the trial court, a proceeding that was never undertaken by appellant.