**Judy BLEVINS, Plaintiff,**

**v.**

**HUDSON & KEYSE, INC., et al., Defendants.**

**No. 1:03–CV–241.**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 29, 2004.

Edward Alan Icove, Smith & Condeni Co., LPA, Cleveland, OH, Steven Charles Shane, Bellevue, KY, for Plaintiff.

Jeffrey Charles Turner, Boyd W. Gentry, Surdyk, Dowd & Turner Co., L.P.A., Dayton, OH, David Kerwin Frank, Mazanec, Raskin & Ryder Co., LPA, Columbus, OH, Todd M. Raskin, Cleveland, OH, for Defendants.

## MEMORANDUM AND ORDER

BECKWITH, Chief Judge.

Before the Court is defendant Hudson & Keyse, Inc.'s motion for judgment on the pleadings (Doc. 14), plaintiff's response (Doc. 15), and defendant's reply (Doc. 16).

### Factual Background

Plaintiff Judy Blevins alleges that, at some unknown time in the past, she obtained a MasterCard credit card account with Household Bank. She denies owing anything on that account. (Compl. ¶ 6–7). Defendant Hudson & Keyse, Inc. purchased the Plaintiff's account from Household Bank. (Answer, ¶ 8) H & K then filed a lawsuit against Plaintiff in Ohio state court. The complaint was filed with an affidavit executed by H & K's President, stating that H & K was the "holder in due course" of Plaintiff's account. (Compl., Exhibits A and B) The pleadings do not reveal the outcome of the state court action.

Plaintiff then filed this action against H & K (and the attorneys representing H & K in the state court), alleging the affidavit violated the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq., and the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq.

H & K filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), arguing that Plaintiff's Complaint is barred by the common law absolute witness immunity doctrine and/or H & K's absolute litigation privilege.

### Analysis

A motion for judgment on the pleadings under Rule 12(c) is decided under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). See, *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir.

1971). A court will, though, accept all reasonable inferences that might be drawn from the complaint. *Fitzke v. Shappell,* 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. *The Fair Debt Collection Practices Act.*

■ Congress first enacted this statute in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations. See *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992). The Court must evaluate the defendant's conduct under the "least sophisticated consumer" test, and objectively determine whether that consumer would be misled by the defendant's statement. *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1029 (6th Cir.1992).

#### 1. *Absolute Witness Immunity.*

■ H & K's primary argument is that its state court affidavit, even if false, is not actionable. H & K argues it is immune from **any** action for damages based upon Carroll's testimony in a judicial proceeding. H & K cites two recent district court decisions holding defendants immune from liability under the FDCPA for statements contained in affidavits filed in state court. See, *Etapa v. Asset Acceptance Corporation,* 373 F.Supp.2d 687 (E.D.Ky.2004); and *Beck v. Codilis & Stawiarski, P.A.,* 2000 WL 34490402, 2000 U.S. Dist. LEXIS 22440 (N.D.Fla., Dec. 26, 2000).

*Etapa* is essentially identical to this case. The defendant there filed a collection action in Kentucky state court supported by an affidavit stating that it was a "holder in due course" of Etapa's credit card debt. Etapa then sued under the FDCPA. The district court granted defendant's motion for judgment on the pleadings, holding that the FDCPA does not abrogate common law witness immunity. *Etapa* relied on the analysis in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), which held that trial witnesses are absolutely immune from liability under 42 U.S.C. § 1983 based upon their trial testimony. The Supreme Court found that Congress did not intend to abrogate the common law doctrine immunizing a trial witness from subsequent tort liability when Congress passed the Civil Rights Acts in 1871.

*Beck* involved an FDCPA claim against a lender's attorney, who had filed an affidavit in the lender's foreclosure action attesting to the hours spent on the foreclosure suit, and the hourly rate charged to the lender. In fact, the attorney charged the lender a flat fee for the foreclosure. The district court held that witness immunity absolutely protected the attorney from the borrowers' FDCPA claims, and that any sanction for the false affidavit must come from the state bar, not the FDCPA.

Plaintiff on the other hand cites *Todd v. Weltman, Weinberg & Reis Co., LPA,* 348

F.Supp.2d 903 (S.D. Ohio 2004) (Dlott, J.). There, the district court rejected the witness immunity argument and denied a motion for judgment on the pleadings in an FDCPA action against attorneys who signed form affidavits filed in state garnishment proceedings. The plaintiffs alleged that the affidavits falsely stated the attorney had "good reason to believe" that the debtor had non-exempt assets subject to garnishment. The district court noted that the common law did not immunize a "complaining" witness from **all** liability, as such a witness could be liable in tort if he acts maliciously or without probable cause.

Many other courts have concluded that the FDCPA applies to "testimonial" documents and to pleadings filed in state court actions. See, e.g., *Miller v. Wolpoff & Abramson,* 321 F.3d 292 (2nd Cir.2003) [verified complaint filed in state collection action by defendant attorneys subject to FDCPA]; *Gearing v. Check Brokerage Corporation,* 233 F.3d 469 (7th Cir.2000) [debt collector's complaint, incorrectly alleging it was "subrogated" to rights of creditor, subject to FDCPA]; *Tomas v. Bass & Moglowski, P.C.,* 1999 U.S. Dist. LEXIS 21533 (W.D. Wis., June 29, 1999) [summons and complaint filed in state replevin action subjected attorney to FDCPA liability]; *Campos v. Brooksbank,* 120 F.Supp.2d 1271 (D.C.N.M.2000) [attorney's fee affidavit and deposition notice subject to FDCPA]; *Jacquez v. Diem Corp.,* 2003 U.S. Dist. LEXIS 8333 (D.C.Ariz. February 20, 2003) [writ of garnishment signed by debt collector subject to FDCPA]. None of these cases discuss the application of witness immunity to the FDCPA.

■ Congress legislates against a background of common-law adjudicatory principles. Where a common law principle is well established, "... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Savings & Loan Assn. v. Solimino,* 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Congressional findings concerning the need for the FDCPA note that "Existing laws and procedures for redressing [abusive debt collection practices] are inadequate to protect consumers." The legislative history does not refer to any specific abusive practices in the context of state court collection litigation, other than to debt collection lawsuits filed in inconvenient venues.[1]

*Briscoe,* cited in both *Etapa* and *Beck,* dealt with a police officer's immunity from § 1983 liability for his allegedly false testimony in a prior criminal trial. Trial witness immunity from defamation suits was well established at common law when the 1871 Civil Rights Act was passed. The Court held that Congress did not intend to abrogate witness immunity for police officers by use of the phrase "under color of state law." After *Briscoe,* the Supreme Court held that a "complaining witness" does not have absolute immunity from § 1983 liability in *Malley v. Briggs,* 475 U.S. 335, 340–341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). There, the Court held a police officer's affidavit in support of an arrest warrant was entitled to only qualified, not absolute immunity, because at common law a complaining witness was not immunized from tort liability for malicious prosecution. And, in *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), the Court held that a prosecutor who executed a fact certifica-

---

1. The FDCPA specifically requires such suits to be filed where the consumer resides or the debt was incurred, to prohibit the practice of filing collection lawsuits in venues far removed from the consumer. See 15 U.S.C. § 1692i(a).

tion for an arrest warrant was acting as a complaining witness, not a prosecutor, and not entitled to absolute immunity. Finally, in *Wyatt v. Cole,* 504 U.S. 158, 164–166, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), the Court held that private parties who filed a replevin action under a state law that was later held unconstitutional were **not** immune from § 1983 liability. The Court noted that absolute immunity for private individuals was not firmly rooted in common law, and was not supported by the strong policy reasons underlying judicial, prosecutorial and trial witness immunity. Therefore, no inference arose that Congress intended to incorporate private party absolute tort immunity into the Civil Rights Act.

Sixth Circuit decisions follow this reasoning. See, e.g., *Vakilian v. Shaw,* 335 F.3d 509 (6th Cir.2003) [special agent for state Attorney General's office not absolutely immune from § 1983 or § 1985 liability for testimony in ex parte hearing]; and, *Vector Research, Inc. v. Howard & Howard Attorneys P.C.,* 76 F.3d 692 (6th Cir.1996) [attorneys who accompanied federal marshal on premises search pursuant to ex parte order not immune from § 1985 liability].

The FDCPA, as noted above, is a broad remedial statute, regulating conduct far broader than that which might lead to liability for defamation or similar common law torts. Congress clearly intended to regulate the "process" of debt collection, and nothing in the statute exempts testimonial documents filed by a debt collector. Moreover, recognition of an absolute witness immunity as defendant urges would be contrary to the statutory purpose of the FDCPA. The Sixth Circuit has made it abundantly clear that the courts must apply unambiguous statutes as written, even when that application may lead to unintended or anomalous results. See, *Olden*

*v. Lafarge Corp.,* 383 F.3d 495, 2004 Fed. App. 0296P at *9–11 (6th Cir.2004). Congress used very broad language in the FDCPA's proscriptions on debt collection practices. Given the broad language of the statute, and the absence of any firmly rooted absolute immunity for a private plaintiff initiating a civil lawsuit with an allegedly false affidavit, the Court cannot conclude that H & K is absolutely immune from FDCPA liability based on the common law witness immunity doctrine. H & K's motion on this ground is denied.

2. *Litigation Privilege.*

■■■ H & K also argues that the affidavit of its President, filed in state court, is absolutely privileged. The litigation privilege differs from the witness immunity doctrine. As noted in *Briscoe,* witness immunity fosters the truth-finding judicial function within the context of the adversarial process. The litigation privilege, on the other hand, broadly protects all actors in the course of judicial proceedings from subsequent liability for acts and conduct related to the proceeding. "While the imposition of an absolute privilege in judicial proceedings may prevent redress of particular scurrilous and defamatory allegations that tend to harm the reputation of the person defamed, a contrary rule, in our view, would unduly stifle attorneys from zealously advancing the interests of their clients in possible violation of the Code of Professional Responsibility, and would clog court dockets with a multitude of lawsuits based upon alleged defamatory statements made in other judicial proceedings." *Surace v. Wuliger,* 25 Ohio St.3d 229, 235, 495 N.E.2d 939 (1986). While the privilege historically was raised to defeat defamation suits, the modern version has broadened in most states to include all kinds of tort liability. See, e.g., *Levin v. United States Fire Ins. Co.,* 639 So.2d 606 (Fla.1994), cited in *Beck* (Florida law);

and, *Heavrin v. Nelson*, 384 F.3d 199, 2004 Fed.App. 0312P (6th Cir.2004) (Kentucky privilege bars claims for fraud and perjury).

Does the FDCPA abrogate this firmly rooted state law privilege? As originally passed, the statute excluded **"any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client"** from the definition of "debt collector." Pub.L. 95–109, sec 803(6)(F). Plainly Congress intended *not* to regulate debt collection litigation when conducted by attorneys. But Congress repealed the attorney exemption in 1986 **without** creating a litigation or litigation-related exception for attorneys OR for traditional debt collectors.

In *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the Supreme Court unanimously held that the Act applies to lawyers' "litigation activities." There, a bank's attorney filed suit against a debtor and, during the course of the litigation, sent a letter to the debtor's attorney trying to settle the case. The complaint and the letter both erroneously sought recovery of an amount for insurance coverage which turned out to be beyond the scope of the original loan agreement. The debtor then sued the attorney under several provisions of the FDCPA. The Seventh Circuit held the attorney was subject to the FDCPA, disagreeing with the Sixth Circuit's contrary opinion in *Green v. Hocking*, 9 F.3d 18 (6th Cir.1993). The Supreme Court affirmed the Seventh Circuit, rejecting the rationale set forth in *Green* that subjecting litigation-related activities to FDCPA liability would create intolerable conflicts. If an attorney can be liable for "litigation activities" which can include filing an affidavit, then certainly H & K is subject to the same liability.

Other federal remedial statutes have been found to implicitly abrogate a state

law litigation privilege. See, e.g., *Nix v. O'Malley*, 160 F.3d 343 (6th Cir.1998), holding that defendant and his attorneys were not immune from civil liability under the federal wiretap statute (18 U.S.C. § 2510) and the similar Ohio statute, for attaching a transcript of the intercepted communication to a summary judgment motion filed in underlying state court litigation. Rejecting an absolute "litigation privilege" in this context, the Sixth Circuit held that nothing on the face of the statute could be read to immunize the defendants from liability simply because the "publication" was in a pleading filed in court. And see, *Rosania v. Taco Bell of America*, 303 F.Supp.2d 878 (N.D.Ohio 2004), holding that the defendant/employer's counterclaim filed in plaintiff's FMLA suit could constitute actionable retaliation under the FMLA, and rejecting the argument that the absolute litigation privilege applied to the filing of the counterclaim. See also, *Steffes v. Stepan Co.*, 144 F.3d 1070 (7th Cir.1998), where plaintiff filed a retaliation lawsuit based upon the defendant's conduct during discovery of the plaintiff's companion Title VII/ADA suit. The Seventh Circuit rejected defendant's contention that an absolute litigation privilege applied to its discovery conduct, because recognizing such a broad privilege could interfere with the policies underlying Title VII and ADA. A state privilege must yield in such circumstances. See, e.g., *Martinez v. California*, 444 U.S. 277, 284, n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) [state immunity law does not bar federal § 1983 claim]; *Irwin v. Mascott*, 112 F.Supp.2d, 937, 962–63 (N.D.Cal.2000) [California litigation privilege not applicable to FDCPA claim].

The Court concludes that the state law "litigation privilege" does not bar plaintiff's FDCPA complaint against H & K,

arising out of H & K's affidavit filed in state court.[2]

Finally, in its Reply Memorandum, H & K suggests that the FDCPA does not apply to documents filed in civil actions, relying on *Vega v. McKay*, 351 F.3d 1334 (11th Cir.2003). The Court rejects this argument. *Vega* addressed whether an "initial communication" for purposes of § 1692e(11) includes a "pleading." That question is not relevant here. Moreover, *Vega* relied on an 1988 FTC opinion that a legal action is not a "communication" under the FDCPA. That opinion has been superceded; see March 31, 2000 FTC Formal Advisory Opinion, finding that after *Heintz v. Jenkins* a lawsuit can be a "communication." The Court also notes that Congress amended § 1692e(11) in 1996, to explicitly state that a "formal pleading filed in a legal action" is exempt from that paragraph's requirements. There would be no need for this amendment if pleadings were already exempted from **all** parts of the Act.

**B.** *Ohio Consumer Sales Practices Act.*

■ Plaintiff also alleges that the defendant's false statement in the affidavit violates the Ohio Consumer Sales Practices Act. Section 1345.02 generally proscribes "unfair or deceptive practices" and is defined to include a representation "That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." Section 1345.03 prohibits "unconscionable" acts and practices, whether occurring before, during or after a consumer transaction.

The Ohio courts have held that the statute applies to debt collectors. See, *Broad-*

*nax v. Greene Credit Service*, 118 Ohio App.3d 881, 893, 694 N.E.2d 167 (Ohio App.1997), *app. den.*, 79 Ohio St.3d 1483, 683 N.E.2d 787 (1997); *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 50, 482 N.E.2d 1260 (1984). So, too, has the Sixth Circuit. See *Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir.1999).

The statute has been applied to litigation activities. See, e.g., *Celebrezze v. United Research*, supra (debt collector's lawsuit filed in distant county violated OCSPA); and, *Gatto v. Frank Nero Auto Lease, Inc.*, 1999 WL 195664, 1999 Ohio App. LEXIS 1571 (Ohio App.1999) (obtaining default judgment and filing motion to revive that judgment subjected attorneys to the OCSPA). Thus it does not appear that the Ohio courts would apply Ohio's absolute litigation privilege to claims brought under the OCSPA.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Hudson & Keyse, Inc.'s motion for judgment on the pleadings.

---

**2.** Nor can the Court discern any federal common law litigation privilege that could apply here. Indeed, *Heintz v. Jenkins* cuts against the existence of any such federal privilege, as the Court explicitly held that litigation related conduct is subject to the FDCPA.