**Alice G. KELLY and Norman P. Kelly, Plaintiffs**

v.

**GREAT SENECA FINANCIAL CORP., et al., Defendants**

**No. 1:04CV615.**

United States District Court, S.D. Ohio, Western Division.

June 16, 2005.

Steven Charles Shane, Bellevue, KY, Stephen R. Felson, Cincinnati, OH, for Plaintiffs.

Michael J. Chapman, Javitch Block & Rathbone LLP, Cincinnati, OH, Michael D. Slodov, Javitch Block & Rathbone LLP, Cleveland, OH, for Defendants.

## ORDER

BECKWITH, Chief Judge.

Before the Court is a motion to dismiss (Doc. 8) filed by the defendants Great Seneca Financial Corporation ("Great Seneca") and Javitch, Block & Rathbone LLP, a law firm ("JBR").[1] Plaintiffs allege that the defendants violated the Federal Fair Debt Collection Practices Act ("FDCPA") when defendants filed a debt collection lawsuit against Plaintiffs. Plaintiffs have opposed the motion (Doc. 14), and defendants filed a reply (Doc. 16). Defendants also filed two motions, seeking leave to file supplemental memoranda (Doc. 9 and 24).

*Factual Background*

Plaintiffs allege that on September 10, 2003, JBR filed a "Complaint for Money" against them in Adams County, Ohio common pleas court. JBR filed the lawsuit on behalf of Great Seneca, a Maryland corporation. The state court complaint (which is attached as Exhibit A to the Complaint in this action) alleged that the Kellys owed Great Seneca $5,389.15 "upon an account." Attached to the state court complaint was a one-page account statement from Great Seneca, showing the Kellys' balance due as of July 28, 2003 was $5,389.15. The document describes the debt by stating that Great Seneca was an "assignee of Sagres Company, assignee of Direct Merchant Bank," with an address in Rockville, Maryland.

The Kellys allege that they answered Great Seneca's state court complaint and also sought discovery from Great Seneca. Before the Kellys received responses to their discovery requests, however, Great Seneca (through JBR) voluntarily dismissed the state court lawsuit without prejudice, as permitted under Ohio law.

The Kellys then filed this suit against Great Seneca and JBR under the FDCPA, 15 U.S.C. § 1692 et seq, and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev.Code § 1345.01 et seq. The Kellys allege that both Great Seneca and JBR are "debt collectors," and that the Kellys' debt is a "consumer debt," triggering application of the FDCPA. They allege that the Great Seneca document attached to the state court complaint was "bogus" and did not accurately reflect any debt obligation the Kellys may have had with the

---

1. Individual JBR attorneys, originally named as defendants, have been dismissed since the motion was filed (Doc. 10).

original creditor. They allege that Great Seneca and JBR violated several sections of the FDCPA and the OCSPA, and seek both damages and injunctive relief.

The defendants seek dismissal of the Kellys' complaint, primarily arguing that they are immune from FDCPA liability. They claim that this immunity is grounded both in the common law witness or litigation privileges, as well as First Amendment guarantees of freedom of speech and the "right to petition." Defendants argue that the filing of a lawsuit by an attorney in the course of client representation should not be the basis for an FDCPA claim. They also attack the constitutionality of the FDCPA as applied to their conduct of filing and then voluntarily dismissing a lawsuit. Finally, defendants argue that, if they are not absolutely immune, the Kellys' allegations fail to state a cognizable claim for relief.

### ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). A court will, though, accept all reasonable inferences that might be drawn from the complaint. *Fitzke v. Shappell*, 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a com-plaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. The Fair Debt Collection Practices Act.

Congress first enacted this statute in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations. See *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992). The Court must evaluate the defendant's conduct under the "least sophisticated consumer" test, and objectively determine whether that consumer would be misled by the defendant's statement. *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1029 (6th Cir.1992).

### B. Absolute Immunity.

This Court has recently addressed arguments that are similar to those made here concerning immunity from FDCPA claims. See, *Hartman v. Asset Acceptance Corp.*, Case No. 1:03–cv–113, Order dated Sept. 29, 2004 (Doc. 59); and, *Blevins v. Hudson & Keyse, Inc.*, et al., 395 F.Supp.2d 662 (S.D.Ohio 2004) (Docs. 20 and 21).

In *Hartman*, this Court rejected an argument that a debt collector's affidavit, filed with its state court complaint, was

**958**

protected from FDCPA liability by a common law "witness" privilege. This Court also found that the FDCPA contained no "litigation or litigation-related exception" for debt collectors filing lawsuits, or for their attorneys. *Id.* at p. 14.[2] In *Blevins*, this Court denied motions to dismiss FDCPA claims against a law firm and the debt collector it represented. The debt collector's affidavit, attached to and incorporated by reference into a complaint the attorneys filed, stated that the debt collector was a "holder in due course" of the debt, a statement the *Blevins* Plaintiff alleged was false. This Court held that neither the debt collector nor its attorneys were absolutely immune from FDCPA liability based on their act of preparing and filing the state court debt collection complaint.

Here, defendants urge this Court to depart from its prior rulings and hold that they are entitled to absolute immunity from the Kellys' complaint. Defendants cite *Etapa v. Asset Acceptance Corp.*, 373 F.Supp.2d 687 (E.D.Ky.2004). There, on facts almost identical to those in *Hartman, supra*, the district court granted Asset's motion for judgment on the pleadings, holding that the FDCPA did not abrogate common law **witness** immunity. *Etapa* relied on the analysis in *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), which held that trial witnesses are absolutely immune from liability under 42 U.S.C. § 1983. The Supreme Court found that Congress did not intend to abrogate the common law doctrine immunizing a trial witness from subsequent tort liability, when Congress passed the 1871 Civil Rights Acts.

To similar effect is *Beck v. Codilis & Stawiarski, P.A.*, 2000 U.S. Dist. LEXIS 22440 (N.D.Fla., Dec. 26, 2000). There, a

lender's attorney filed an affidavit in the lender's foreclosure action attesting to the hours he spent on the foreclosure suit, and the hourly rate he charged to the lender. In fact, the attorney charged the lender a flat fee for the foreclosure. The district court held that witness immunity absolutely protected the attorney from the borrowers' FDCPA claims, and that any sanction for the false affidavit must come from the state bar, not the FDCPA.

However, as this Court noted in *Hartman*, many courts have concluded that the FDCPA applies to "testimonial" documents and to pleadings filed in state court debt collection actions. See, e.g., *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir.2003) [verified complaint filed by defendant attorneys subject to FDCPA]; *Gearing v. Check Brokerage Corporation*, 233 F.3d 469 (7th Cir.2000) [debt collector's complaint subject to FDCPA]; *Tomas v. Bass & Moglowski, P.C.*, 1999 U.S. Dist. LEXIS 21533 (W.D. Wis., June 29, 1999) [summons and complaint in state replevin action subjected attorney to FDCPA liability]; *Campos v. Brooksbank*, 120 F.Supp.2d 1271 (D.C.N.M.2000) [attorney's fee affidavit and deposition notice subject to FDCPA]; *Jacquez v. Diem Corp.*, 2003 U.S. Dist. LEXIS 8333 (D.C.Ariz. Feb. 20, 2003) [writ of garnishment signed by debt collector subject to FDCPA]. None of these cases discuss any potential immunity defense.

■ Congress legislates against a background of common-law adjudicatory principles. Where a common law principle is well established, "... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed.*

---

**2.** An appeal from this Court's order is pending before the Sixth Circuit, Docket No. 04– 4369.

*Savings & Loan Assn. v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Congressional findings concerning the FDCPA noted that "Existing laws and procedures for redressing [abusive debt collection practices] are inadequate to protect consumers." The FDCPA, as noted above, is a broad remedial statute, regulating conduct far broader than that which might lead to tort liability for defamation or libel, the types of claims to which the witness immunity doctrine is primarily concerned. Congress clearly intended to regulate the "process" of debt collection, and nothing suggests that Congress intended to absolutely immunize legal proceedings from the statute's reach. In fact, just the opposite is true. As originally passed, the statute excluded "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of "debt collector." Pub.L. 95–109, § 803(6)(F). Plainly Congress intended not to regulate attorneys engaged in debt collection litigation for their clients. But Congress repealed the attorney exemption in 1986 without creating a litigation or litigation-related exception for attorneys or for traditional debt collectors.

Moreover, after that statutory change, the Supreme Court unanimously held that the FDCPA applies to lawyers' "litigation activities." See *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). There, a bank's attorney filed suit against a debtor and, during the course of the litigation, sent a letter to the debtor's attorney trying to settle the case. The complaint and the letter both erroneously sought recovery of an amount for insurance coverage which turned out to be beyond the scope of the original loan agreement. The debtor then sued the attorney under several provisions of the FDCPA. The Seventh Circuit held the attorney was subject to the statute, disagreeing with the Sixth Circuit's contrary opinion in *Green v.*

*Hocking*, 9 F.3d 18 (6th Cir.1993). The Supreme Court affirmed the Seventh Circuit, rejecting the Sixth Circuit's rationale set forth in *Green*, that subjecting litigation-related activities to FDCPA liability would create intolerable conflicts.

■ The defendants' motion also suggests that a "litigation" privilege protects them from the FDCPA. This state law privilege protects all actors in judicial proceedings from subsequent liability for acts and conduct related to the proceeding. See, e.g., *Surace v. Wuliger*, 25 Ohio St.3d 229, 235, 495 N.E.2d 939 (1986): "While the imposition of an absolute privilege in judicial proceedings may prevent redress of particular scurrilous and defamatory allegations that tend to harm the reputation of the person defamed, a contrary rule, in our view, would unduly stifle attorneys from zealously advancing the interests of their clients in possible violation of the Code of Professional Responsibility, and would clog court dockets with a multitude of lawsuits based upon alleged defamatory statements made in other judicial proceedings."

This Court concluded in *Hartman* that the FDCPA trumps this state law litigation privilege. And there seems little doubt that a state privilege must yield to a federal statute in these circumstances. See, e.g., *Steffes v. Stepan Co.*, 144 F.3d 1070 (7th Cir.1998), rejecting application of absolute litigation privilege to discovery conduct in a Title VII/ADA case. The defendant's supplemental memorandum (Doc. 9) concedes this point.

If the defendants are advocating the existence of a federal common law litigation privilege, *Heintz v. Jenkins* cuts squarely against their argument. So the defendants also premise their immunity arguments on their First Amendment rights of free speech, and to petition for redress, which they assert are violated by applying

FDCPA to the act of filing a complaint in a court of law. But whether the historical antecedents for common law immunity emanate from First Amendment concerns, or from the underpinnings of the Anglo–American privilege for judicial proceedings, the defendants' immunity arguments cannot overcome the unambiguous text of the statute and the unambiguous holding of *Heintz v. Jenkins*, which this Court must follow.

Defendants then resort to arguments based on FDCPA's legislative history, which do not support a different result. Whatever that history may indicate about Congressional intent to include attorneys and litigation-related conduct within the reach of the statute, it is the words Congress used in the statute that matter. The Sixth Circuit has made it abundantly clear that the courts must apply unambiguous statutes as written, even when that application may lead to unintended or anomalous results. See, *Olden v. LaFarge Corp.*, 383 F.3d 495, 504–505 (6th Cir.2004). See also, *Thomas v. Simpson & Cybak*, 392 F.3d 914, 918–919 (7th Cir.2004), where the en banc Seventh Circuit rejected a law firm's argument that the FDCPA's plain language should be ignored, because making service of a summons and complaint subject to FDCPA liability would unreasonably interfere with litigation activities by debt collection attorneys.

■ Nor can this Court agree with defendants' argument that the FDCPA is an unconstitutional exercise of Congressional Commerce Clause powers. This Court rejected a similar argument in *Blevins v. Hudson & Keyse, supra*, noting that federal statutes are presumptively valid, even in the face of a constitutional challenge. See *Fullilove v. Klutznick*, 448 U.S. 448, 472, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). Moreover, there is nothing in the FDCPA that purports to regulate the practice of law, only the practice of debt collection.

Neither of the defendants argue that conforming their conduct to the FDCPA would require them to violate any law or rule that governs either debt collection or the practice of law. The Court finds that the FDCPA does not violate the Tenth Amendment nor the Commerce Clause.

Finally, defendants "public policy" arguments are appropriately directed to Congress, not to this Court. The Court notes, however, that defendants' dire predictions about the chilling effects of the "Damocles sword" of FDCPA liability are rather overstated. As noted in *Taylor v. Luper, Sheriff & Niedenthal Co., LPA,* 74 F.Supp.2d 761, 765 (S.D.Ohio 1999), FDCPA liability is not imposed for good faith mistakes or errors of law or mathematics. The FDCPA's statutory "bona fide error" defense is available here, as it is to all debt collectors covered by the statute.

### C. *Plaintiffs' Claims Under the FDCPA.*

Plaintiffs allege that the defendants violated four subsections of the FDCPA. Each is discussed in turn.

■ *Section 1692d* prohibits conduct when its "natural consequence" is to "harass, oppress, or abuse" a debtor. The section lists several examples of conduct intended to be covered, including threats of violence, use of obscene or profane language, causing a phone to repeatedly ring with intent to annoy, abuse or harass a person, and so forth. The Court finds that the filing of a complaint in an appropriate venue is not the kind of conduct covered by § 1692d as a matter of law. The examples listed in § 1692d make this plain. Moreover, the "natural consequence" of filing a lawsuit is to bring the issue to the court for resolution, not to "harass, oppress, or abuse" the defendant. Plaintiffs' claim under section 1692d is therefore dismissed.

*Section 1692e* generally prohibits false, misleading or deceptive representations in connection with debt collection. The Court must apply the objective "least sophisticated consumer" standard in order to determine if the statement was deceptive or misleading. For example, in *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389 (6th Cir.1998), a debt collector's letter was "signed" by a non-existent person. The Sixth Circuit rejected the argument that the use of an alias was deceptive, even though the statement was undeniably false. The Court noted that the false statement did not cause any prejudice or harm to the Plaintiff, and that use of an alias was not deceptive within the statutory meaning.

■ *Subsection 1692e(2)* prohibits the false representation of "the character, amount, or legal status" of a debt. Plaintiffs allege that defendants violated this section because the amount and/or the legal status of the debt was falsely represented in the state court complaint. Assuming the statement was false, which the Court must for purposes of Rule 12, is that alone sufficient to impose FDCPA liability? The Seventh Circuit concluded that a literally false statement in a collection letter violates the FDCPA as a matter of law. See, *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir.1996). And, after *Lewis*, where a per se false statement was apparently not enough without "deception," the Sixth Circuit suggested in an unpublished opinion that an "incorrect" representation in a collection letter is sufficient under section 1692e(2) to withstand a motion to dismiss, without discussing its deceptive or misleading character. See, *Savage v. Hatcher*, 109 Fed.Appx. 759, 761, 2004 WL 2030310, *2 (6th Cir.2004). The Court therefore must deny the motion to dismiss Plaintiffs' claim under section 1692e(2).

■ *Section 1692e(5)* proscribes "threats to take any action that cannot legally be taken or that is not intended to be taken." This section is most obviously aimed at the typical "dunning letter," threatening imminent litigation if the debt-or doesn't "pay up." *Section 1692e(10)* is a catch-all clause that prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiffs allege that both sections were violated by the filing of the state court complaint. This Court cannot dismiss the claims under these subsections for the same reasons discussed above concerning section 1692e(2).

■ *Section 1692f(1)* prohibits the attempt to collect any debt or additional obligation such as interest, fees, charges or expenses, "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." There is no doubt that filing a lawsuit is an "attempt to collect a debt." The Court cannot now resolve the question of whether or not the debt as stated in the state court complaint was authorized by the original debt agreement, or otherwise permitted by applicable law. The motion to dismiss this claim is denied.

D. *The Ohio Consumer Sales Practices Act Claims.*

Plaintiffs also allege that defendants state court complaint violated several subsections of the OCSPA. The Ohio courts have applied the OCSPA to debt collectors. See, *Broadnax v. Greene Credit Service*, 118 Ohio App.3d 881, 893, 694 N.E.2d 167 (Ohio App.1997), *app. den.*, 79 Ohio St.3d 1483, 683 N.E.2d 787 (1997). So too has the Sixth Circuit. See *Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir.1999).

Because the Court is not dismissing Plaintiffs' federal claims, the Court will retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.

§ 1367. Plaintiffs may pursue both federal and state claims at this juncture. The Ohio statute plainly permits a private plaintiff to seek declaratory or injunctive relief; see R.C. 1345.09(D). It would be premature to dismiss that prayer for relief on a Rule 12 motion without the development of a factual record.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint is denied, with the exception of Plaintiffs' claim under Section 1692d of the FDCPA, which is dismissed. The first motion for leave to file a supplemental memorandum (Doc. 9) is granted. The second motion for leave to file a copy of an appellate brief (Doc. 24) is denied.